# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| FIREDISC, INC.; THE GAME MANUFACTURERS ASSOCIATION; and RYAN WHOLESALE, INC., | § § § § | |
| Plaintiffs, | § § | Case No. 1:25-cv-01134-DAE |
| v. | § § § | |
| DONALD J. TRUMP, in his official capacity as President of the United States; EXECUTIVE OFFICE OF THE PRESIDENT; UNITED STATES OF AMERICA; KRISTI NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY; RODNEY S. SCOTT,[1] in his official capacity as Commissioner for U.S. Customs and Border Protection; and U.S. CUSTOMS AND BORDER PROTECTION, | § § § § § § § § § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' OPPOSED MOTION TO TRANSFER

Under 28 U.S.C. § 1631, defendants respectfully request that this Court transfer this action to the United States Court of International Trade (CIT). Under Local Rule CV-7(i), defendants conferred with plaintiffs via email regarding their position on this motion. Plaintiffs indicated that they oppose.

## INTRODUCTION

Plaintiffs challenge the President's imposition of tariffs on goods from foreign trading partners under the International Emergency Economic Powers Act of 1977 (IEEPA) via executive orders that modify the Harmonized Tariff Schedule of the United States (HTSUS) or direct agencies to do so. The President found that America's exploding trade deficit, the implications of that deficit for our

---

[1] Under Fed. R. Civ. P. 25(d), Rodney S. Scott, the Commissioner for U.S. Customs and Border Protection (CBP) since June 23, 2025, "is automatically substituted as a party" for Pete R. Flores.

economy and national security, and a fentanyl importation crisis that has claimed thousands of American lives constitute national emergencies. Invoking IEEPA, President Trump imposed tariffs to deal with the emergencies by, *inter alia*, prompting Canada, Mexico, and China to stem the fentanyl crisis, Exec. Order 14,193, 90 Fed. Reg. 9113, 9114 (Feb. 7, 2025); Exec. Order 14,194, 90 Fed. Reg. 9117, 9118 (Feb. 7, 2025); Exec. Order 14,195, 90 Fed. Reg. 9121, 9121-22 (Feb. 7, 2025), and to remedy non-reciprocal trade barriers and to strengthen the United States's domestic manufacturing infrastructure and defense industrial base, Exec. Order 14,257, 90 Fed. Reg. 15,041, 15,041 (Apr. 7, 2025).

This Court lacks jurisdiction over this civil action and should transfer the case to the CIT. It is no accident that this Court has not previously heard a case on the lawfulness of HTSUS provisions: A specialized Article III court of national jurisdiction—the CIT—has exclusive jurisdiction under 28 U.S.C. §1581 over civil actions arising out of the HTSUS and executive orders making or directing modifications to the HTSUS. In fact, the CIT and the Federal Circuit are currently exercising jurisdiction over several cases challenging these same presidential actions at issue here. In those cases, the CIT has concluded that it "has exclusive jurisdiction to hear this action under 28 U.S.C. §1581(i)" because "an action involving a challenge to a presidential action that imposes tariffs" through "amendments to the HTSUS" is "one that arises from a 'law providing for'" tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1365-67 (Ct. Int'l Trade 2025). That decision—which went on to (erroneously) invalidate the tariffs plaintiffs challenge—is currently stayed pending appeal and the appeal is fully briefed before the en banc Federal Circuit, which will hear oral argument on July 31, 2025. *V.O.S. Selections, Inc. v. United States*, No. 2025-1812 (Fed. Cir.).

Several other plaintiffs have filed similar challenges around the country. While four courts have concluded that the CIT has exclusive jurisdiction over these cases, just one court has declined to transfer the case to the CIT or dismiss for lack of subject-matter jurisdiction. The Court should hew to the majority approach, conclude that it lacks jurisdiction, and transfer this case to the CIT.

## BACKGROUND

### I.      Legal and Factual Background

In 1977, Congress enacted IEEPA to give the President a suite of emergency powers to re-spond rapidly to "any unusual and extraordinary [foreign] threat … to the national security, foreign policy, and economy of the United States." 50 U.S.C. §1701(a). The broad and flexible powers granted to the President under IEEPA are "essentially the same as" those under its predecessor, the Trading With the Enemy Act (TWEA). *Regan v. Wald*, 468 U.S. 222, 227-28 (1984); *see Dames & Moore v. Regan*, 453 U.S. 654, 671-72 (1981) (IEEPA was "directly drawn" from the language of TWEA). IEEPA specifies certain powers, 50 U.S.C. §1702(a)(1)(B), that the President may exercise "to deal with" the emergency, §1701(a). Among those powers is the power to "regulate … importation … of … any property in which any foreign country or a national thereof has any interest." §1702(a)(1)(B).

Relevant here are four declared national emergencies and the President's actions to deal with these emergencies.

*Mexico, Canada, and China*. In January 2025, the President declared the flow of illicit drugs like fentanyl into the United States, and the public-health consequences, to be a national emergency. Proc-lamation 10,886, 90 Fed. Reg. 8327 (Jan. 29, 2025). The President then "expand[ed] the scope of the national emergency declared in that [p]roclamation to cover" certain conduct by the governments of Canada, Mexico, and the People's Republic of China (PRC) that had contributed to the crisis. 90 Fed. Reg. at 9114, 9118, 9121-22. The President invoked IEEPA and impose tariffs on many imported Canadian, Mexican, and PRC products that were in his judgment necessary to address the declared emergencies. *E.g.*, *id.* at 9114, 9118, 9122-23. In accordance with these Executive Orders, the U.S. Department of Homeland Security, through CBP, implemented these tariffs by modifying the HTSUS, which sets forth the duty rates for all imported goods.[2]

---

[2] *Notice of Implementation of the President's Executive Order 14193*, 90 Fed. Reg. 11,423 (Mar. 6, 2025); *Notice*

*Reciprocal Tariffs.* In early April, the President declared another emergency, determining that "a lack of reciprocity in our bilateral trade relationships, disparate tariff rates and non-tariff barriers, and U.S. trading partners' economic policies that suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits, constitute an unusual and extraordinary [foreign] threat to the national security and economy of the United States." 90 Fed. Reg. at 15,041. The President found that "[l]arge and persistent annual U.S. goods trade deficits have led to the hollowing out of our manufacturing base; inhibited our ability to scale advanced domestic manufacturing capacity; undermined critical supply chains; and rendered our defense-industrial base dependent on foreign adversaries." *Id.*  To deal with this emergency, the President imposed tariffs on many imports "from all trading partners." *Id.* at 15,045. The President has also taken subsequent actions that were necessary to address this emergency, including actions in response to retaliation from the PRC and steps from other foreign trading partners to align with the United States on economic and national-security matters. *See, e.g.*, Exec. Order 14,266, 90 Fed. Reg. 15,625, 15,626 (Apr. 15, 2025); Exec. Order 14,259, 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order 14,298, 90 Fed. Reg. 21,831, 21,832 (May 21, 2025).

## II.    Plaintiffs' Suit

On July 21, 2025, plaintiffs, FIREDISC, Inc., the Game Manufacturers Association, and Ryan Wholesale, Inc., filed a complaint in this Court. ECF No. 1 (Compl.). Plaintiffs allege that they or their members import products and suffer "economic injuries including lost profits" as well as "reduced product availability" and "delayed release schedules." *Id.* ¶¶13-15. Plaintiffs allege that the challenged executive orders exceed the President's authority under IEEPA, *id.* ¶45,  are not "necessary" to address the stated emergencies, *id.* ¶57, and violate the Constitution, *id.* ¶¶67-74. They also allege that the HTSUS modifications implementing the orders violate the Administrative Procedure Act (APA). *Id.* ¶77. As a

---

*of Implementation of Executive Order 14194*, 90 Fed. Reg. 11,429 (Mar. 6, 2025); *Amendment to Notice of Implementation of Executive Order 14193*, 90 Fed. Reg. 11,743 (Mar. 11, 2025); *Amendment to Notice of Implementation of Executive Order 14194*, 90 Fed. Reg. 11,746 (Mar. 11, 2025).

remedy, plaintiffs ask the Court to: (1) "declar[e]" the challenged orders "unlawful and unconstitutional"; (2) "declar[e] that … the resulting HTSUS modifications are unlawful and in violation of the" APA; (3) "[v]acat[e] all HTSUS modifications made to implement" the challenged orders; and (4) permanently enjoin defendants "from implementing or enforcing" the challenged orders or "the resulting modifications to the HTSUS." *Id.* at Prayer For Relief ¶¶A-E.

## STANDARD OF REVIEW

Whenever a civil action is filed and a court finds "there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action … to any other such court … in which the action or appeal could have been brought at the time it was filed." 28 U.S.C. §1631. Plaintiffs bear the burden to establish subject-matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). When there are doubts whether the CIT has exclusive jurisdiction, "'the prudent thing'" for a district court to do is to "uphold[] exclusivity of the [CIT's] jurisdiction" by "'transfer[ring] the case to the CIT" under 28 U.S.C. §1631, "'so that the CIT can determine the question of its own jurisdiction.'" *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004) (cleaned up) (quoting *Pentax Corp. v. Myhra*, 72 F.3d 708, 711 (9th Cir. 1995)); *see, e.g.*, *Furniture Brands Int'l, Inc. v. ITC*, 804 F. Supp. 2d 1, 6-7 (D.D.C. 2011) (transferring to the CIT because it "is the better forum" to decide its jurisdiction); *Pat Huval's Fisherman Wharf v. ITC*, 2006 WL 2460846, at *2-4 (W.D. La. Aug. 22) (similar).

## ARGUMENT

**I.    Transfer is Required Under 28 U.S.C. §1631 Because the CIT Has Exclusive Subject-Matter Jurisdiction Over Plaintiffs' Civil Action**

The CIT is an Article III court that possesses "exclusive jurisdiction" over "any civil action commenced against" the government that "arises out of any law of the United States providing for … tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue" or "providing for … administration and enforcement with respect to the matters referred

to in" any preceding provision of §1581(i)(1). *See* 28 U.S.C. §1581(i)(1)(B), (D); §251(a) (establishing the CIT as an Article III court). Congress made clear that the district courts lack concurrent jurisdiction over these matters: "The district courts shall not have jurisdiction under this section of any matter within the exclusive jurisdiction of" the CIT. §1337(c); *see Pat Huval's*, 2006 WL 2460846, at *2. The Supreme Court confirmed as much: When one of the "grants of exclusive jurisdiction to the [CIT]" applies, all other district courts are "divested of jurisdiction" over the action. *K-Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182-83 (1988); *see, e.g., Pentax*, 72 F.3d at 711.

**A.** The CIT has exclusive jurisdiction over this case because plaintiffs challenge the President's authority to impose tariffs under IEEPA, the modifications to the HTSUS, and agencies' administration and enforcement of those tariffs as codified in the HTSUS. Because the HTSUS and modifications to it are laws, 19 U.S.C. §3004(c)(1), plaintiffs' case arises out of a law providing for the challenged tariffs or their administration and enforcement and thus falls within the CIT's exclusive subject-matter jurisdiction, 28 U.S.C. §1581(i)(1)(B), (D).

Tariffs imposed by executive order are implemented by effecting or directing modifications to the HTSUS. The HTSUS, and presidential modifications to it, are laws of the United States and establish the tariff rates for merchandise imported into the United States. *See* 19 U.S.C. §1202; *Michael Simon Design*, 609 F.3d at 1336.[3] Indeed, the statute establishing the HTSUS specifies that "[e]ach modification or change made to the Harmonized Tariff Schedule by the President under authority of law," as well as "[t]he provisions of the Harmonized Tariff Schedule … enacted by" Congress, "shall be considered to be statutory provisions of law for all purposes." 19 U.S.C. §3004(c)(1). The HTSUS, and modifications to it, are thus both "law[s] of the United States providing for … tariffs" and "law[s] of the United States

---

[3] Although it is "codified at 19 U.S.C. § 1202," *Arko Foods Int'l, Inc. v. United States*, 654 F.3d 1361, 1363 (Fed. Cir. 2011), the HTSUS is not published in the U.S. Code; it is instead separately published by the International Trade Commission. *See* 19 U.S.C. §3007; Int'l Trade Comm'n, Harmonized Tariff Schedule, https://hts.usitc.gov/ (last visited July 28, 2025).

providing for … administration and enforcement with respect to" tariffs. 28 U.S.C. §1581(i)(1)(B), (D).

The challenged executive orders imposing tariffs under IEEPA modified the HTSUS—for example, by "inserting … new headings" providing for specific tariff rates applicable to goods from each country, 90 Fed. Reg. at 15,090, by "modifying the HTSUS to temporarily suspend" certain tariffs, *id.* at 15,626, or by directing the Secretary of Homeland Security to alter the HTSUS to effectuate the orders, *id.* at 9115. Plaintiffs identify the imposition of tariffs through those modifications as the source of their injuries, and as a remedy, they seek to invalidate and vacate those modifications. Compl. ¶1 ("vacat[ing] all resulting modifications made to the [HTSUS]").

This case thus plainly "arises out of" a "law … providing for … tariffs," 28 U.S.C. §1581(i)(1)(B): the HTSUS and the executive orders modifying it or directing its modification. The crux of plaintiffs' claims is that paying higher tariff rates will harm them. *See, e.g.*, Compl. ¶7. Those higher tariff rates are imposed by the executive orders and the modifications to the HTSUS that the executive orders effectuate or direct. Plaintiffs' challenge to the IEEPA tariffs thus "originates from, grows out of, and flows from the executive orders through which the President imposed tariffs," which modify, or instruct the agencies to modify, the HTSUS. *California v. Trump*, 2025 WL 1569334, at *4 (N.D. Cal. June 2).

For these reasons, the CIT—the only court with familiarity and expertise on the HTSUS—has already exercised jurisdiction over indistinguishable challenges to *these* tariffs. In reaching that conclusion, the CIT explained that it has exclusive jurisdiction over challenges to the IEEPA tariffs because the relevant orders "made amendments to the HTSUS," which "is the law of the United States setting tariffs." *V.O.S. Selections*, 772 F. Supp. 3d at 1365-67. By "effect[ing] changes to the [HTSUS]," the challenged executive orders are "laws" under §1581(i)(1), in that "they modify a statute" and "bind Customs to collect duties at the rates they prescribe." *V.O.S. Selections, Inc. v. United States*, No. 1:25-cv-00066, ECF No. 63 at 3 (Ct. Int'l Trade June 3, 2025). Several district courts across the country

have also concluded that the CIT has exclusive jurisdiction over materially indistinguishable IEEPA tariff cases. *See Webber v. DHS*, 2025 WL 1207587 (D. Mont. Apr. 25); *Emily Ley Paper Inc. v. Trump*, 2025 WL 1482363, (N.D. Fla. May 2); *California*, 2025 WL 1569334, at *1.[4]

**B.** The CIT would have exclusive jurisdiction even without 19 U.S.C. §3004(c)(1). The Court of Customs and Patent Appeals—the Federal Circuit's predecessor, which heard appeals from the CIT's predecessor—heard similar challenges to tariffs under IEEPA's predecessor statute (TWEA). *United States v. Yoshida Int'l*, 526 F.2d 560 (C.C.P.A. 1975); *Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*, 693 F.2d 1089 (Fed. Cir. 1982). Other courts likewise concluded that the CIT's predecessor had exclusive jurisdiction to determine whether IEEPA's predecessor authorized tariffs. *See, e.g., Cornet Stores v. Morton*, 632 F.2d 96, 99-100 (9th Cir. 1980) (challenge to TWEA tariffs); *Henry Pollak, Inc. v. Blumenthal*, 444 F. Supp. 56 (D.D.C.) (same), *aff'd*, 593 F.2d 1371 (D.C. Cir. 1977). It is unlikely that these courts were uniformly mistaken about jurisdiction, and the judicial consensus about the jurisdiction of the CIT's predecessor holds *a fortiori* here, because Congress "expanded the jurisdiction of the CIT beyond that of the earlier Customs Court" when it enacted §1581(i). *See Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th Cir. 1993).

In any event, though §1581(i) was enacted to expand the CIT's jurisdiction, it was already clear that "only in the Customs Court may an importer seek relief from a levy of duties on his importations. That court's jurisdiction is not ousted by [a plaintiff's] effort to draw the statute into controversy, or by his presentation of constitutional issues for resolution." *Kocher v. Fowler*, 397 F.2d 641, 642–43 (D.C. Cir. 1967); *see Bos. Wool Trade Ass'n v. Snyder*, 161 F.2d 648, 649 (D.C. Cir. 1947) ("It is clear that the controversy concerns the duty to be imposed upon certain imports. As such, it is within the exclusive jurisdiction of the Court of Customs and Patent Appeals."). That plaintiffs have drawn IEEPA

---

[4] Just one district court disagreed. *Learning Resources, Inc. v. Trump*, 2025 WL 1525376 (D.D.C. May 29). Briefing is underway in the government's appeal of that decision.

"into controversy" and presented "constitutional issues for resolution" thus cannot "oust[]" the CIT's jurisdiction over their action challenging tariffs. *Kocher*, 397 F.2d at 642-43.

**C.** The purpose of the CIT's exclusive jurisdiction confirms that plaintiffs' civil action belongs in the CIT. The CIT's exclusive-jurisdiction statute consolidates tariff law "in one place … with an already developed expertise in international trade and tariff matters," thus ensuring a "degree of uniformity and consistency." *Conoco, Inc. v. U.S. Foreign-Trade Zones Bd.*, 18 F.3d 1581, 1586 (Fed. Cir. 1994). Consolidating tariff matters in a single jurisdiction also protects the constitutional requirement that "[a]ll Duties, Imposts, and Excises shall be uniform throughout the United States." U.S. Const. art. 1, §8, cl. 1. If tariff challenges like those raised by plaintiffs could be brought in any (or every) district court, there would be a risk of inconsistent results and different tariffs imposed in different regions of the country, in direct conflict with Congress' statutory design. Indeed, Congress has consistently placed judicial review of tariff matters in a single forum, beginning with the Board of Appraisers in 1890, *see* Customs Administration Act of 1890, ch. 407, 26 Stat. 131; then the Customs Court in 1926, *see* Act of May 28, 1926, ch. 411, 44 Stat. 669; and finally today's CIT.

Reflecting the exclusive jurisdiction statutes and their underlying purposes of ensuring uniformity, the CIT's exclusive jurisdiction is broad and encompasses constitutional challenges to tariffs, duties, exactions, and embargoes. *See, e.g., U.S. Shoe Corp. v. United States,* 523 U.S. 360 (1998) (constitutional challenge to Harbor Maintenance Fee); *PrimeSource Bldg. Prods., Inc. v. United States*, 59 F.4th 1255 (Fed. Cir. 2023) (constitutional challenge to tariffs imposed under Section 232 of the Trade Expansion Act of 1962); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1350-51 (Fed. Cir. 2010) (constitutional challenge to Tariff Schedules of the United States).

The CIT also regularly hears challenges to Presidential proclamations and executive orders imposing duties and tariffs, and the Federal Circuit, which hears appeals from the CIT, has repeatedly upheld its jurisdiction in such cases. *See, e.g., Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed.

Cir. 2021) (Presidential proclamation imposing under section 232); *Solar Energy Indus. Ass'n v. United States*, 111 F.4th 1349 (Fed. Cir. 2024) (Presidential proclamation imposing tariffs under section 201 of Trade Act of 1974); *Michael Simon*, 609 F.3d 1335 (Presidential proclamation modifying tariff schedules); *Motion Sys. Corp. v. Bush*, 437 F.3d 1356 (Fed. Cir. 2006) (en banc) (Presidential proclamation declining to impose China-specific safeguard tariff); *Corus Group PLC v. ITC*, 352 F.3d 1351 (Fed. Cir. 2003) (Presidential proclamation imposing duties under section 201); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985) (Presidential proclamation imposing duties under section 201).

Moreover, the CIT has entertained thousands of challenges to Presidential actions imposing tariffs, including APA challenges. *See, e.g.*, *HMTX Indus. v. United States*, No. 20-00177 (Ct. Int'l Trade), *appeal filed*, No. 23-1891, ECF No. 5 (Fed. Cir. May 25, 2023) (identifying the 4,100 similar cases). Plaintiffs' complaint raising these challenges should be treated no differently. Especially because Congress understood that the CIT would have jurisdiction over such challenges, having authorized the CIT to convene three-judge panels for cases "rais[ing] an issue of the constitutionality of … a proclamation of the President or an Executive order[.]" 28 U.S.C. §255(a).

Finally, even if the Court has doubts whether the CIT has exclusive jurisdiction over this case, transfer is still warranted. The CIT "is the better forum" to decide its own jurisdiction. *Furniture Brands Int'l*, 804 F. Supp. 2d at 6-7. "[T]he prudent thing to do" when there appears to be a conflict in jurisdiction between the CIT and district courts "is to transfer the case to the CIT, so that the CIT can determine the question of its own jurisdiction." *Pentax*, 72 F.3d at 711. That is especially true because the CIT has now confirmed its jurisdiction and the en banc Federal Circuit is poised to decide the *V.O.S.* appeal. At bottom, "the better course" is to defer to those courts rather than "create a circuit conflict." *Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1113 (D.C. Cir. 1994).

<u>**CONCLUSION**</u>

Defendants respectfully request that the Court transfer this action in its entirety to the CIT.

Dated: July 28, 2025

OF COUNSEL:

**ALEXANDER K. HAAS**
Director

**STEPHEN M. ELLIOTT**
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

**SOSUN BAE**
Senior Trial Counsel
**BLAKE W. COWMAN**
**COLLIN T. MATHIAS**
**CATHERINE M. YANG**
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

Respectfully submitted,

**BRETT A. SHUMATE**
Assistant Attorney General

**ERIC J. HAMILTON**
Deputy Assistant Attorney General

**PATRICIA M. McCARTHY**
Director

**CLAUDIA BURKE**
Deputy Director

**JUSTIN R. MILLER**
Attorney-In-Charge
International Trade Field Office

*/s/ Luke Mathers*
**LUKE MATHERS**
Trial Attorney
Illinois State Bar No. 6330094
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9236 (phone)
(212) 264-1916 (fax)
Luke.Mathers@usdoj.gov

***Attorneys for Defendants***

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I conferred with counsel for plaintiffs via email on July 28, 2025, regarding this motion.  Plaintiffs' counsel indicated that they were opposed to the motion, and we were unable to resolve that opposition.

*/s/ Luke Mathers*
**Luke Mathers**
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

Andrew J. Morris
John J. Vecchione
New Civil Liberties Alliance
4250 North Fairfax Dr., Suite 300
Arlington, Virginia 22203

/s/ Luke Mathers
**Luke Mathers**
Trial Attorney