IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| FIREDISC, Inc., *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants*. | Case No. 1:25-cv-01134-DAE |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO
DEFENDANTS' MOTION TO STAY PROCEEDINGS
<u>PENDING DISPOSITION OF DEFENDANTS' MOTION TO TRANSFER</u>**

    The government seeks a stay until this Court decides its motion to transfer the matter to the Court of International Trade ("CIT"). It should be denied. The government's motion to stay fails to meet the most basic requirements for the extraordinary relief it seeks. The government expressly states that it seeks the stay to avoid responding to Plaintiffs' motion for summary judgment, complaining that preparing a response would be a "waste" of its "resources." Defs.' Motion to Stay ("Mot.") at 3. But as explained below, a defendant's desire to avoid responding to a pending motion cannot satisfy the demanding standard for a stay. In any event, no possible "waste" exists. The government already has briefs responding to Plaintiff's summary judgment arguments, having prepared them to respond to other tariff challenges that raise the same issues. Plaintiffs need to bring this action to obtain relief, especially in light of the significant limitations on relief in the wake of the Supreme Court's decision in *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2560 (2025). *See also Learning Resources v. Trump*, No. 25-cv-01248, 2025 WL 1525376, *7 (D.D.C. May 29, 2025) (citation modified), *appeal docketed*, No 25-5202, 15 (D.C. Cir. May 30,

2025) (holding these tariffs unlawful but issuing an injunction applicable only to the two plaintiffs).

At the same time the government is claiming hardship from modifying existing briefs, Plaintiffs are suffering devastating damage from the illegal tariffs this lawsuit challenges. Plaintiffs are small businesses lacking the substantial capital that enables larger businesses to survive the tariffs' dire economic effects. Plaintiffs are suffering severe cash flow challenges, losing revenue, and generally struggling to remain afloat. They cannot absorb these punishing effects indefinitely. Some business that are members of Plaintiff Game Manufacturers Association already have failed. The government cannot use a stay motion to stall Plaintiffs' right to pursue relief from the ongoing injuries inflicted by these unlawful tariffs.

**PLAINTIFFS' COMPLAINT AND MOTION FOR SUMMARY JUDGMENT**

Plaintiffs are two small businesses located near Austin, Texas, and an association of small businesses with Texas members. Compl. ¶¶ 13–15. Their Complaint challenges the massive tariffs President Trump imposed by claiming authority under an emergency law, the International Emergency Economic Powers Act ("IEEPA"). *Id*. ¶¶ 36–43. These tariffs (the "IEEPA tariffs") are imposing extreme financial injuries on Plaintiffs, threatening their ability to survive. *Id*. ¶¶ 13–15. Plaintiffs and the members of Plaintiff GAMA are suffering severe cash flow challenges, losing revenue, and generally struggling to remain afloat. Some business that are members of Plaintiff Game Manufacturers Association already have failed. *Id.* ¶ 15. Plaintiffs' central claim is that the tariffs are unlawful because IEEPA—which does not even refer to tariffs—does not authorize the President to impose tariffs. *Id.* ¶ 1.

When Plaintiffs filed their Complaint, they also moved for summary judgment asking this Court to rule that the tariffs are unlawful because IEEPA does not authorize them. Now, however, the government seeks to avoid responding to that motion and to delay Plaintiffs' relief. It has

moved to transfer this case to the CIT, and asks the Court to stay this litigation until it decides the transfer motion. Citing the goals of "preserv[ing] party and judicial resources," avoiding "waste," and "protect[ing] litigants, witnesses and the public against unnecessary inconvenience and expense," Mot. at 1 (citation and internal quotation marks omitted), the government seeks relief from responding to Plaintiffs' motion for summary judgment unless the Court denies the motion to transfer.

The government does not acknowledge, however, that it has already briefed the very issue presented in the summary judgment motion—multiple times. At least five earlier-filed lawsuits (summarized below in section II) make the same claim that IEEPA does not authorize tariffs, and the government has submitted briefs arguing that it does. *See*, *e.g.*, Defs.' Reply in Support of Mot. to Transfer, *Emily Ley Paper, Inc. v. Trump*, No. 3:25-cv-464-TKW-ZCB (N.D. Fla. May 19. 2025). So it already has the substance of the response it contends would require such substantial government resources that preparing it would be wasteful.

## ARGUMENT

### I. The Motion to Stay Does Not Begin to Meet the Governing Standard for Obtaining a Stay of Litigation

#### A. To obtain a stay, the government must establish "a clear case of hardship or inequity" that outweighs the prejudice delay would cause Plaintiffs

The government fails to acknowledge the legal standard that governs motions to stay litigation. That standard creates a strong presumption against stays, stating that if "even a fair possibility" exists that a stay will prejudice the nonmovants, the burden "lies heavily" on the movant to show a "*pressing* need" for a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added). It requires the movant to establish "a *clear* case of *hardship* or *inequity* in being required to go forward if there is even a fair possibility that the stay for which he prays

3

will work damage to someone else." *Id. See also Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983) (citing *Landis* and vacating stay order).

### B. The government's arguments do not begin to satisfy the governing standard

Defendants do not begin to meet these requirements. Their primary argument, if not their only one, is that responding to Plaintiffs' summary judgment motion would be a "waste of judicial and party resources." Mot. at 3. But even if responding to the summary judgment motion were burdensome—which it is not, for the reason explained above—under *Landis* and *Wedgeworth* that fact would not justify a stay. Submitting a routine response to a routine motion is not a "hardship or inequity," and it does not create a "pressing need" for a stay. 299 U.S. at 255.

Aware that it cannot meet its obligation under the *Landis* standard, the government attempts to *reverse* the Supreme Court's strong presumption against a stay into a presumption in favor of one. It demands that *Plaintiffs* substantiate specific prejudice from staying their litigation. See Mot. at 3. That gambit should fail, for the obvious reason that it gets the law backwards. The Supreme Court was emphatic on this point, stating that "the burden of making out the wisdom and justice" of a stay lies "heavily" on the movant. *Landis*, 299 U.S. at 256. In any event, as summarized above, Plaintiffs are prejudiced by every day resolution of this case is delayed.

The obvious starting point for *Landis* and *Wedgeworth* is that delaying the litigation of Plaintiffs' constitutional claims is inherently prejudicial. See *Elrod v. Burns*, 427 U.S. 347, 375 (1976). Here, Defendants would stay a case where Plaintiffs allege constitutional violations, already moved for summary judgment, and are small businesses suffering additional ongoing and non-recoverable damage from the government's violations.

The government cites snippets from several cases, including *Landis*, but those citations are so far afield they only highlight the government's inability to support its motion.[1] The government cites one case where the court granted a stay pending resolution of a motion to transfer, but that motion was controlled by 28 U.S.C. § 1292(d)(4)(B), which applies to motions to transfer to the U.S. Court of Claims. *Transcapital Leasing Assocs. 1992-VII, L.P. v. United States*, 2005 WL 8160535, at *1 (E.D. Tex. Apr. 26, 2005). Because that statute governed, the case did not involve the *Landis* standard for a motion to stay. *Id.*

Likewise, the government makes the irrelevant and factually erroneous argument that a stay is warranted to await the outcome of multiple cases pending in the CIT because, the government says, "resolution of those cases will be instructive—or perhaps even controlling—in this case." Mot. at 3. But the government offers no authority that permits stay of this case because unrelated parties have brought similar cases. The government also fails to cite any case that could assist this court in deciding the subject-matter jurisdiction issue. In the only case it cites, jurisdiction is not an issue because the plaintiffs in that case filed directly in the CIT. *See* Mot. at 3 (citing *V.O.S. Selections, Inc. v. Trump*, 2025 WL 1649290 (Fed. Cir. June 10, 2025) (en banc)).[2]

---

[1] The *In re Horseshoe Entertainment*, 337 F.3d 429, 433 (5th Cir. 2003) court issued a writ of mandamus when a district court had failed to decide a motion to transfer after 13 months. That is nothing like this case. Nor is *Van Dusen v Barrack*, 376 U.S. 612, 616 (1964). The language quoted from that landmark case addresses the costs if a court fails to grant a change of venue required under 28 U.S.C. § 1404. *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995), is similarly irrelevant, merely stating that district courts should not decide issues over which they lack jurisdiction.

[2] The government's argument about proceeding here is also somewhat ironic given it's strenuous arguments against universal injunctions and related assertion that legal issues like this should "percolate" in the district courts and the Circuits. The law would be advanced by a ruling from this district, and, if necessary, the 5th Circuit, in exactly the way the Government has so often said it should.

## II. The Government's Discussion of Jurisdiction Is Irrelevant, but Warrants a Response Because It Omits Critical Facts About Recent Decisions

Although the government's probability of success on its transfer motion is not relevant to the motion to stay, the government attempts to show that the motion to transfer has a high probability of success. It discusses jurisdictional decisions issued by courts in other cases challenging the IEEPA tariffs, but the discussion omits critical parts of the picture and erroneously suggests the jurisdiction issue is nearly settled.

In fact, the decisions are fractured, and none of them provides an analysis that is the same as the government's current jurisdictional theory. The government also does not point out that it has changed its theory, abandoning the argument it made in the earlier cases. Nor does the government mention that the cited courts disagree with each other about the rationale for their jurisdictional holdings, with no two courts adopting the same reasoning. The following summary highlights some of the different analyses.

The question is whether this case is covered by 28 U.S.C. § 1581(i)(1), which assigns exclusive jurisdiction over certain cases to the CIT. This provision grants the CIT jurisdiction over "any civil action commenced against the United States … that arises out of any law of the United States providing for …  tariffs … ." 28 U.S.C. § 1581(i)(1). Whether this provision applies to cases challenging the IEEPA tariffs is a question of first impression in this circuit.

So far, four federal district courts have considered the question, three of them in cases where possible CIT jurisdiction rested solely on IEEPA. (The fourth, *Webber v. Department of Homeland Security*, No. 4:25-cv-00026-GF-DLC, 2025 WL 1207587, at *4 (D. Mont. Apr. 25, 2025), *reconsideration denied*, 2025 WL 1555218 (D. Mont. June 2, 2025), included tariff-law claims as well as the IEEPA claim so that jurisdiction may have

6

lain under the tariff laws, even without IEEPA.) One court, the U.S. District Court for the District of Columbia, held that § 1581(i)(1) does not apply, while the others found that it did, thus establishing exclusive jurisdiction in the CIT. As summarized below, the district courts that granted transfers to the CIT relied on pre-IEEPA authorities that, even if they were valid as applied to IEEPA (which they are not), are not relevant in this circuit.

The most thorough opinion was issued by the U.S. District Court for the District of Columbia in *Learning Resources*. The court held that the action "arose out of IEEPA," but that § 1581(i)(1) did not apply because IEEPA is not a "law providing for tariffs." 2025 WL 1525376, at *7–*8 (citation modified).

The U.S. District Court for the Northern District of California took a different tack. It concluded that the action arose out of the executive orders (not out of IEEPA, as the *Learning Resources* court held), that the executive orders are "laws of the United States," that as a result that § 1581(i)(1) applied and jurisdiction lay in the CIT. *California v. Trump*, No. 25-cv-03372, 2025 WL 1569334, at *1, *4 (N.D. Cal. June 2, 2025), *appeal docketed*, No. 25-3493 (9th Cir. June 3, 2025).

The U.S. District Court for the Northern District of Florida held that § 1581(i)(1) applied on the ground that the action "ar[ose] under" IEEPA and the Administrative Procedure Act (no other court relied on the APA as a jurisdictional hook), *Emily Ley Paper, Inc. v. Trump*, No. 3:25-cv-464-TKW-ZCB, 2025 WL 1482771, *3 (N.D. Fla. May 20, 2025), and that IEEPA is a law providing for tariffs, *id*. at *7. The court reached the latter conclusion by giving great weight to *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560, 584 (C.C.P.A. 1975), a 1975 opinion from the predecessor to the Federal Circuit that addressed the Trading With the Enemy Act, the predecessor to IEEPA. 2025 WL 1482771, WL at *4–

\*5. *Yoshida* is not controlling or even persuasive authority, particularly in the Fifth Circuit, as Plaintiffs will explain in their response to the government's motion to transfer.

Finally, the U.S. District Court for the District of Montana addressed a challenge to the same tariffs. *Webber*, 2025 WL 1207587. But the Complaint in that case asserted a claim under an actual tariff law (the Trade Act of 1962), which may have provided jurisdiction under § 1581(i)(1) without reaching the question of jurisdiction based on IEEPA. *Id.* at \*4. The court nonetheless added dictum addressing that question, and concluded that § 1581(i)(1) would apply to a claim arising under IEEPA. *Id*. at \*4–\*5. It based that conclusion on a Ninth Circuit case addressing the Trading with the Enemy Act, *Cornet Stores v. Morton*, 632 F.2d 96, 97, 99–100 (9th Cir. 1980), and on *Yoshida Int'l, Inc.*, 526 F.2d 560 at 584. *See Webber*, 2025 WL 1207587, at \*4–\*5.

The CIT also briefly addressed jurisdiction in a case filed there, where the parties did not dispute the issue. The court treated the action as arising out of the Executive Orders mandating the IEEPA tariffs. *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d. 1350, 1366 (Ct. Int'l Trade 2025), *appeal docketed*, No. 25-1812 (Fed. Cir. May 28, 2025).

Not one of these cases applied the same jurisdictional analysis the government advocates in its motion to transfer in this case. Here, it argues that challenges to the IEEPA tariffs "arise[] out of" the Executive Orders themselves and the modifications to the HTSUS that implement the Executive Orders, and that those Executive Orders and tariff modifications are "laws of the United States" providing for tariffs. *See* Defs.' Mot. to Transfer 7. This is a new argument for the government. It earlier argued that § 1581(i) applied to challenges to the IEEPA tariffs because the cases "ar[ose]" out of IEEPA, an argument that required the government to show that IEEPA "provides for tariffs" in order to

8

establish CIT jurisdiction. *See, e.g.*, *Emily Ley Paper, Inc. v. Trump*, No. 3:25-cv-464-TKW-ZCB, dkt. no. 5 (Defs.' Mot. to Transfer) (Apr. 14, 2025) and dkt no. 35 (Defs.' Reply in Support of Mot. to Transfer) (May 19, 2025). As various cases progressed, however, the government abandoned that theory and substituted the one it now advances. This change in jurisdictional theory—and the failure of the government's new theory to track with any decided case—illustrate the unsettled state of the jurisdiction issue. As Plaintiffs will explain in their response to Defendants' motion to transfer, this Court should resolve the question by following the well-reasoned approach set out in the court's opinion in *Learning Resources.* 2025 WL 152376, at *7–*8 and denying the government's motion to transfer. But, in any event, a stay is completely unwarranted in the present posture of this case.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Stay Proceedings Pending Disposition of Defendants' Motion to Transfer.

Respectfully submitted,

/s/ *John J. Vecchione*
John J. Vecchione
Andrew J. Morris*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Tel.: (202) 869-5210
Fax: (202) 869-5238
john.vecchione@ncla.legal
andrew.morris@ncla.legal

 * admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

  I certify that on August 4, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants.

Luke Mathers
Trial Attorney
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278

                <u>/s/ John J. Vecchione</u>
                John J. Vecchione