**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |
|---|---|
| FIREDISC, Inc., *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:25-cv-01134-DAE |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' RESPONSE AND OPPOSITION TO**
**DEFENDANTS' MOTION TO TRANSFER**

John J. Vecchione
Andrew J. Morris*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Tel.: (202) 869-5210
Fax: (202) 869-5238
john.vecchione@ncla.legal
andrew.morris@ncla.legal

 * admitted *pro hac vice*

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ................................................................................................... 1

ALLEGATIONS OF THE COMPLAINT ...................................................................... 2

ARGUMENT ........................................................................................................ 5

    I.  ONLY "EXPRESS" STATUTORY LANGUAGE COULD ELIMINATE THIS COURT'S § 1331 JURISDICTION .............................................................................................. 5

    II.  THE GOVERNMENT CANNOT ESTABLISH § 1581 JURISDICTION BY IGNORING IEEPA AND THAT IEEPA DOES NOT PROVIDE FOR TARIFFS ............................................ 6

    A. No Court Has Adopted the Jurisdictional Theory the Government Advances ............. 6

    B. The Government's Novel Theory Fails to Meet Two § 1581 Requirements ................. 8

       1. This action "arises" only out of IEEPA, not the executive orders or HSTUS modifications ........................................................................................ 8

       2. The executive orders and HTSUS modifications are not "laws of the United States" in this context ...................................................................... 12

    C. The Government Cannot Avoid § 1581's Plain Language ........................................ 13

    III.  THE GOVERNMENT'S VAGUE ALTERNATE THEORY BASED ON *YOSHIDA* IS WHOLLY UNSUPPORTED ................................................................................................ 14

    IV.  THIS COURT IS REQUIRED TO DECIDE ITS OWN JURISDICTION, NOT PERMIT ANOTHER COURT TO DO SO ............................................................................... 15

CONCLUSION ..................................................................................................... 16

CERTIFICATE OF SERVICE ................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**

*Alcan Sales, Div. of Alcan Aluminum Corp. v. United States*,
   693 F.2d 1089 (Fed. Cir. 1982)................................................................. 14

*Am. Air Parcel Forwarding Co. v. United States*,
   515 F. Supp. 47 (Ct. Int'l Trade 1981) ...................................................... 9

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
   598 U.S. 175 (2023) ................................................................................. 5

*Barnes v. United States*,
   No. 1:25-cv-00043, 2025 WL 1483384 (Ct. Int'l Trade May 23, 2025) .................................. 7

*California v. Trump*,
   No. 25-cv-03372-JSC, 2025 WL 1569334 (N.D. Cal. June 2, 2025).................................... 6, 7

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988)................................................................................. 9, 10

*City of New York v. FCC*,
   486 U.S. 57 (1988).................................................................................. 12

*Coal. to Pres. the Integrity of Am. Trademarks v. United States*,
   790 F.2d 903 (D.C. Cir. 1986) ................................................................. 13

*Cornet Stores v. Morton*,
   632 F.2d 96 (9th Cir. 1980) ...................................................................... 14

*Corus Staal BV v. United States*,
   493 F. Supp. 2d 1276 (Ct. Int'l Trade 2007) ............................................. 9

*Dreyfus v. Von Finck*,
   534 F.2d 24 (2d Cir. 1976)........................................................................ 12

*Earth Island Institute v. Christopher*,
   6 F.3d 648 (9th Cir. 1993) ........................................................................ 14

*Emily Ley Paper, Inc. v. Trump*,
   No. 3:25-cv-464-TKW-ZCB, 2025 WL 1482771 (N.D. Fla. May 20, 2025) ........................ 7

*Furniture Brands Int'l, Inc. v. ITC*,
   804 F. Supp. 2d 1 (D.D.C. 2011) ............................................................. 15

*Glaxo Wellcome Inc. v. United States*,
   126 F. Supp. 2d 581 (Ct. Int'l Trade 2000) ............................................. 12

*Gully v. First Nat'l Bank*,
   299 U.S. 109 (1936)................................................................................. 9

*Henry Pollak, Inc. v. Blumenthal*,
   444 F. Supp. 56 (D.D.C. 1977) ............................................................... 14

*Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*,
   665 F.3d 671 (5th Cir. 2011) .................................................................... 5

*Int'l Lab. Rights Fund v. Bush*,
   357 F. Supp. 2d 204 (D.D.C. 2004) ........................................................ 8, 9, 11

*K Mart Corp. v. Cartier, Inc.*,
   485 U.S. 176 (1988)................................................................................. 13, 16

*Learning Res., Inc. v. Trump*,
   No. 25-cv-01248, 2025 WL 1525376 (D.D.C. May 29, 2025)............................. 1, 2, 7, 8, 10

*Lee Yuen Fung Trading Co. v. Dep't of Treasury*,
   18 C.I.T. 139 (1994) ............................................................................... 11

*Merrell Dow Pharms., Inc. v. Thompson*,
  478 U.S. 804 (1986)...................................................................................9
*Pentax Corp. v. Myhra*,
  72 F.3d 708 (9th Cir. 1995) ....................................................................15
*Rosencrans v. United States*,
  165 U.S. 257 (1897).....................................................................................5
*Schaper Mfg. Co., Div. of Kusan, Inc. v. Regan*,
  566 F. Supp. 894 (Ct. Int'l Trade 1983) ..................................................9
*Sierra Club v. U.S. Dep't of Energy*,
  134 F.4th 568 (D.C. Cir. 2025)................................................................12
*Sprint Commc'ns, Inc. v. Jacobs*,
  571 U.S. 69 (2013)....................................................................................16
*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)....................................................................................15
*Trump v. CASA, Inc.*,
  145 S. Ct. 2540 (2025)................................................................................2
*United States v. Heinszen*,
  206 U.S. 370 (1907)..................................................................................13
*United States v. Yoshida Int'l*,
  526 F.2d 560 (C.C.P.A. 1975) .................................................................14
*V.O.S. Selections, Inc. v. United States*,
  772 F. Supp. 3d. 1350 (Ct. Int'l Trade 2025) ..........................................7
*Webber v. Department of Homeland Sec.*,
  25-26-GF, 2025 WL 1207587 (D. Mont. Apr. 25, 2025) ..........................7
*Yoshida Int'l, Inc. United States*,
  378 F. Supp. 1155 (Cust. Ct. 1974) ........................................................14

STATUTES
19 U.S.C. § 3004(c)(1) ...............................................................................12
28 U.S.C. § 1581(i).......................................................................................1
28 U.S.C. § 1581(i)(l)(D)..............................................................................6
28 U.S.C. § 1582(a) ....................................................................................14

OTHER AUTHORITIES
Exec. Order No. 14,195,
  90 Fed. Reg. 9,121 (Feb. 1, 2025)............................................................3
Exec. Order. No. 14,257,
  90 Fed. Reg. 15,041 (April 2, 2025) ........................................................4

REGULATIONS
Implementation of Additional Duties on Products of the People's Republic of China,
  90 Fed. Reg. 9038 (Feb. 5, 2025) ...........................................................3

## INTRODUCTION

Plaintiffs' Complaint challenges the massive, worldwide tariffs the President has imposed through a months-long series of executive orders. The President claims he has authority to impose the tariffs based on the International Emergency Economic Powers Act ("IEEPA"). But IEEPA grants him no such authority—it authorizes emergency foreign sanctions, not tariffs. It does not even contain the word "tariff."

This is a fatal problem for the government's motion to transfer this case to the Court of International Trade ("CIT"). The governing statute provides jurisdiction in the CIT only if a case "arises out of" a substantive law that "provid[es] for tariffs," 28 U.S.C. § 1581(i)—and the government's motion does not even attempt to show that IEEPA provides for tariffs. Nor could the government succeed if it tried. Indeed, the only court to reach the merits on this question held that IEEPA does not "provid[e] for tariffs." *Learning Res., Inc. v. Trump*, No. 25-cv-01248, 2025 WL 1525376, *13 (D.D.C. May 29, 2025), *appeal docketed*, No 25-5202, 15 (D.C. Cir. May 30, 2025).

Rather than face up to IEEPA, the government attempts a Rube Goldberg workaround by claiming this action actually "arises out of" two other sources: the executive orders that cite IEEPA to order tariffs, and the Harmonized Tariff Schedule ("HTSUS") modifications that document the tariffs. But this workaround fails two § 1581 requirements for CIT jurisdiction. First, this action does not "arises out of" the executive orders or the HTSUS. It arises only out of IEEPA—the substantive law the President invoked, and the only law this Court needs to interpret to decide the case. Second, § 1581(i) requires that the action must arise out of a "law of the United States." But because IEEPA does not give the President tariff authority, the executive orders and HTSUS modifications lack the legal foundation to qualify as laws.

The government's transfer arguments therefore fail. So Plaintiffs—two small Texas businesses and an association of small businesses with Texas members—have the right under 28 U.S.C. § 1331 to sue in this Court. Plaintiffs' Complaint raises urgent constitutional and statutory claims with immediate, life-or-death consequences for the businesses. They cannot stand on the sidelines and rely on other pending challenges to the IEEPA tariffs, especially in light of the current uncertainty about the scope of relief in any one case. *See Trump v. CASA, Inc*., 145 S. Ct. 2540, 2560 (June 27, 2025). The *Learning Resources* decision illustrates these limitations. That court correctly held the IEEPA tariffs unlawful. But it issued only a narrow injunction against the tariffs, limited in scope to that case's two plaintiffs. It then stayed even that limited relief pending appeal. *Learning Res.,* 2025 WL 1525376, at *7. Plaintiffs are entitled to pursue relief in this Court, which should deny Defendants' Motion to Transfer.

This opposition proceeds as follows. Section I describes the demanding standard that governs efforts to oust § 1331 jurisdiction. Section II demonstrates that the government's novel theory cannot meet this standard, because it fails the two § 1581 requirements described above. Section III shows that the government's half-hearted alternative argument based on *United States v. Yoshida*, 526 F.2d 560 (C.C.P.A. 1975), is baseless. Finally, section IV explains why this Court must resolve this jurisdiction question for itself, not send it to the CIT to decide.

## ALLEGATIONS OF THE COMPLAINT

The Complaint challenges Executive Orders the President issued beginning February 1, 2025, claiming authority under IEEPA to impose tariffs on imports from U.S. trading partners. The Complaint's central claim is that IEEPA does not authorize the President to order any tariffs. Compl ¶ 1. Plaintiffs challenge two sets of executive orders, "trafficking tariff" orders issued primarily in February and March and "reciprocal tariff" orders issued beginning in April.

On February 1, 2025, President Trump imposed the first "trafficking tariffs." He issued three Executive Orders imposing tariffs on imports from Canada, Mexico, and China. *Id*. ¶ 36. He declared an emergency relating to China because of the influx of opioids from that country. *Id*. ¶ 37. The Order imposed an incremental across-the-board tariff of 10%. *Id*. The same day, the President declared or reiterated declarations of emergencies relating to Canada and Mexico, also primarily because of opioids. *Id.* He ordered a 25% tariff on all imports from those countries. *Id*. ¶ 36. A month later, the President issued another Executive Order that doubled the incremental China tariff to 20%. *Id*. ¶ 38. All these Executive Orders claimed authority under IEEPA. *Id*. ¶ 36. The executive orders instructed the Secretary of Homeland Security to make "modifications" to the HSTUS to "effectuate" the tariff rates stated in the executive orders. *See, e.g.*, Exec. Order No. 14,195, 90 Fed. Reg. 9,121 (Feb. 1, 2025). In turn, the Secretary of Homeland Security notified U.S. Customs and Border Protection ("CBP") to implement the necessary modifications, and CBP carried out that task. *See*, *e.g.*, Implementation of Additional Duties on Products of the People's Republic of China, 90 Fed. Reg. 9038 (Feb. 5, 2025) (Notice by the U.S. Customs and Border Patrol); Compl. ¶¶ 38-39.

On April 2, 2025, the President began imposing the "reciprocal tariffs." He issued an Executive Order declaring another national emergency, this one based on "large and persistent annual U.S. goods trade deficits." *Id*. ¶ 40. The order expanded the President's tariff campaign, imposing a reciprocal tariff of at least 10% on imports from "all trading partners," except for higher, country-specific reciprocal tariffs on 57 trading partners. *Id*. The President again  cited IEEPA as his authority. *Id*. ¶ 40.

These reciprocal tariffs resulted in particularly high tariffs on imports from China. The April 2, 2025 Executive Order imposed a country-specific 34% reciprocal tariff on China, *id*. ¶ 41,

in addition to the trafficking tariffs described above. The President repeatedly raised the reciprocal tariff on imports from China until it reached 125%. *Id*. Combining this 125% reciprocal tariff with the 20% tariff ordered March 6, 2025, the total tariff on imports from China is 145%. *See id.* ¶ 1. The executive orders declared the HTSUS modified to reflect the rates stated in the order, and instructed the Secretary of Homeland Security, among others, to implement the order. *See, e.g.*, Exec. Order. No. 14,257, 90 Fed. Reg. 15,041, 15,045 (April 2, 2025).

Since then, the President has issued a stream of executive orders and statements altering the IEEPA tariffs, including the countries covered and the applicable tariff rates. The IEEPA tariffs continue to change from country to country and week to week.

Plaintiffs are two small businesses and an association of small businesses that import products and pay related tariffs. Plaintiff FIREDISC, Inc., based in Katy, Texas, manufactures and sells outdoor cooking products. Compl. ¶ 13. Plaintiff Ryan Wholesale, Inc., based in Florence, Texas, manufactures and sells structural timber trusses and other fine wood products. *Id*. ¶ 15. Plaintiff Game Manufacturers Association (GAMA), a non-profit trade organization, represents approximately 1,500 businesses in the tabletop games industry. *Id*. ¶ 14. Plaintiffs and GAMA's members face immense financial harm because of the tariffs at issue here. *Id*. ¶¶ 13–17. Plaintiffs and the members of GAMA import items from countries including China, Italy, Canada, Poland, Spain, Germany, and the United Kingdom. *Id.* ¶¶ 13–15.

The Complaint asserts four claims, each raising a federal question. Counts I and II contend that the President acted *ultra vires* by ordering tariffs without statutory authority. Count III asserts a constitutional claim that, if IEEPA were construed to authorize tariffs, it would violate the nondelegation doctrine. Count IV asserts an Administrative Procedure Act ("APA") claim against the two Defendant agencies and their heads. It asserts that, because the President's Executive

4

Orders were unlawful (because IEEPA does not authorize him to order tariffs), the agencies' actions to implement them also were unlawful. None of the Counts seek return of improperly paid tariffs—the chief bailiwick of the CIT.

## ARGUMENT

### I. ONLY "EXPRESS" STATUTORY LANGUAGE COULD ELIMINATE THIS COURT'S § 1331 JURISDICTION

The government's motion faces an exceptionally demanding standard, because only "equally express" statutory language can eliminate a court's jurisdiction. *Rosencrans v. United States*, 165 U.S. 257, 262 (1897) ("[S]tatutes clearly defining the jurisdiction of the courts … must control … in the absence of subsequent legislation equally express."); *see also Axon Enter., Inc. v. Fed. Trade Comm'n* and *SEC v. Cochran*, 598 U.S. 175, 208 (2023) (Gorsuch, J., concurring) (quoting the same) (*Axon/Cochran*). This "express" requirement is particularly demanding when a defendant attempts to displace § 1331 jurisdiction, because "'jurisdiction conferred by 28 U.S.C. § 1331,' in particular, 'should hold firm against mere implication[s]' from other laws." *Axon/Cochran*, 598 U.S. at 208 (Gorsuch, J., concurring) (quoting *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012)). The Fifth Circuit follows this "express" rule strictly with respect to the CIT. *Int'l Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 676 (5th Cir. 2011) ("the CIT's exclusive jurisdiction is expressly defined, and thus delimited by statutes")(rejecting an argument that the CIT has exclusive jurisdiction). The government's motion falls well short of this demanding standard, as section II now explains.

## II.    THE GOVERNMENT CANNOT ESTABLISH § 1581 JURISDICTION BY IGNORING IEEPA AND THAT IEEPA DOES NOT PROVIDE FOR TARIFFS

The government seeks to displace § 1331 jurisdiction by invoking 28 U.S.C. § 1581, which provides the CIT exclusive jurisdiction over certain civil actions. The government cites § 1581(i)(1)(B), under which the CIT has jurisdiction if an action "arises out of a[] law of the United States providing for … tariffs." 28 U.S.C. § 1581(i)(1)(B).[1] This provision governs here, the government argues, on the theory that (1) this action "arises out of" the executive orders and HTSUS modifications that implemented the IEEPA tariffs, and (2) those executive orders and HTUS modifications qualify as "laws of the United States." *See* Mot. 2, 7. Both parts of this theory fail, for the reasons explained below.

### A.  No Court Has Adopted the Jurisdictional Theory the Government Advances

The government's failure to support its theory begins with the complete lack of judicial precedent. The government claims the theory is backed by four district court decisions, Mot. 2, 7–8, but a review of the cited decisions shows the opposite: Not one court adopted the "arises out of" theory the government now advances. One court did state, with little explanation, that the case arose out of the executive orders—but not out of the HTSUS modifications. *California v. Trump*, No. 25-cv-03372-JSC, 2025 WL 1569334, at *4 (N.D. Cal. June 2, 2025), *appeal docketed*, No. 25-3493 (9th Cir. June 3, 2025). This statement was erroneous and incomplete,

---

[1] The government also contends that the CIT has jurisdiction under § 1581(i)(1)(D), which provides jurisdiction over "any action … that *arises* out of any *law* of the United States … providing for … administration and enforcement with respect to the matters referred to in" any preceding provision of § 1581(i)(1). 28 U.S.C. § 1581(i)(l)(D) (emphasis added). iThis argument fails for two reasons. First, as explained below in section II.B.1, this action does not "arise[] out of" the executive orders or the HTSUS amendments. Second, as explained below in section II.B.2, in this case the executive orders and HTSUS amendments are not "law[s] of the United States."

because it glossed over or ignored the extensive precedent governing the "arise out of" and "law[s] of the United States" requirements. *Id.* The other three decisions all assumed the action "ar[ose] out of" IEEPA, and only IEEPA. *See Webber v. Dep't of Homeland Sec.*, 25-26-GF, 2025 WL 1207587, *4–*5 (D. Mont. Apr. 25, 2025); *Emily Ley Paper, Inc. v. Trump*, No. 3:25-cv-464-TKW-ZCB, 2025 WL 1482771, at *4 (N.D. Fla. May 20, 2025); *Learning Res.,* 2025 WL 1525376, at *13.

Nor does the cited CIT decision help. Mot. at 2, 7; *V.O.S. Selections, Inc.*, 772 F. Supp. 3d. 1350, 1365–67 (Ct. Int'l Trade 2025), does not state that the challenge to the IEEPA tariffs arose out of the HTSUS. Rather, that court assumed it had jurisdiction based on the executive orders, giving the vague explanation that "a presidential action that imposes tariffs, duties, or other import restrictions is one that arises from a 'law providing for' those measures." *Id.* at 1366. This statement also was erroneous, but no party in that case was contesting jurisdiction. In any event, the opinion does not support the government's theory of jurisdiction based on the executive orders and HTSUS modifications.

Moreover, the government's motion omits the other CIT decision that addressed jurisdiction over a challenge to the IEEPA tariffs. That decision concluded that the action arose out of IEEPA—again contradicting the government's current theory. *Barnes v. United States*, No. 1:25-cv-00043, 2025 WL 1483384, at *3 (Ct. Int'l Trade May 23, 2025). Even putting aside this omitted decision, no case the government cites adopted its theory that a challenge to the IEEPA tariffs arises out of the executive orders and the HSTUS modifications.[2]

---

[2] Of these four rulings on government motions to transfer to the CIT, three involved complaints where, as in the instant case, possible CIT jurisdiction rested solely on IEEPA. Of those three, one found jurisdiction in the district court, *Learning Res.*, 2025 WL 1525376, at *12, and two found jurisdiction in the CIT, *Emily Ley Paper, Inc.*, 2025 WL 1482771, at *7–*8; *Cal v. Trump*, 2025 WL 1569334, at *6. The two that found jurisdiction in the CIT did so because they relied on pre-

### B.  The Government's Novel Theory Fails to Meet Two § 1581 Requirements

#### 1.  This action "arises" only out of IEEPA, not the executive orders or HSTUS modifications

The reason for this lack of precedent becomes clear when examining the theory's substance, which fails both of § 1581's requirements. It fails the "arises out of" requirement because precedent interpreting that term shows that this action arises exclusively out of IEEPA. Courts identify the law (or laws) from which an action "arises" by focusing on the substantive law the court must interpret to decide the case. The court in *Learning Resources*, for example, held that the action arose from IEEPA because that statute is "the substantive law under which the President acted." 2025 WL 1525376, at *7 n.4.

This focus on the underlying substantive law is well-established. *Learning Resources* cited *International Labor Rights Fund v. Bush*, 357 F. Supp. 2d 204, 208 (D.D.C. 2004), to illustrate the distinction between the law a case "arises out of" and other laws that play a lesser role in a case and do not give rise to it. There, plaintiff advocacy groups sued U.S. Customs and Border Protection under the APA. *Id*. at 206. They sought to compel the agency to take investigative and enforcement actions that, plaintiffs contended, were required by the Tariff Act of 1930. *Id*. The plaintiffs asserted the district court had jurisdiction under § 1331 because they had sued under the APA. provision authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id*. at 208 (citing § 706(1)). But the court held that the CIT had exclusive jurisdiction under § 1581 because the action "ar[ose] out of" the Tariff Act of 1930. *Id*. This tariff statute, the

---

IEEPA authorities or on old Ninth Circuit authorities that rely on those pre-IEEPA authorities to conclude that IEEPA authorizes tariffs. The fourth, *Webber v. Department of Homeland Security*, 2025 WL 1207587, at *7, included tariff-law claims as well as the IEEPA claim so that the court found that jurisdiction lay under the tariff laws, even without IEEPA.

court stated, was the "substantive law giving rise to the[] claims" and the law that "would require an interpretation" to "determin[e] … the government's liability." *Id*. The court emphasized that the complaint's "'statutory and regulatory framework' section … focuse[d] solely on" the Tariff Act of 1930, leading to "the obvious conclusion" that the plaintiff's claim arose out of that statute and not the APA. *Id.*

The CIT also follows this approach, applying § 1581(i) by focusing on the action's "gravamen," described as the "thrust of the [plaintiff's] grievance," *Schaper Mfg. Co., Div. of Kusan, Inc. v. Regan*, 566 F. Supp. 894, 896 (Ct. Int'l Trade 1983). A similar CIT formulation distinguishes between the "true nature of the action" on one hand and, on the other, the procedural vehicle or form that implemented the disputed decision. *Corus Staal BV v. United States*, 493 F. Supp. 2d 1276, 1285 (Ct. Int'l Trade 2007) (internal quotation marks and citation omitted)(distinguishing between "liquidation instructions," which only implemented a decision and whose accuracy was not disputed, and the substantive law underlying the instructions, which was disputed and therefore determined jurisdiction).

Courts interpreting other jurisdictional statutes reflect the same focus on the substantive law that must  be interpreted to decide the case. For example, the Supreme Court explained that a claim "aris[es] under" 28 U.S.C. § 1331 only if federal law is an "essential" element of the claim and a "genuine and present controversy … exist[s] with reference to it." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936).[3] Similarly, it later stated that a claim "aris[es] under" the law that "create[d]" the claim, and which the court therefore must construe to decide that claim. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988) (addressing 28 U.S.C.

---

[3] Section 1331 is the source of the "arises" language in § 1581(i). *Am. Air Parcel Forwarding Co. v. United States*, 515 F. Supp. 47, 51 (Ct. Int'l Trade 1981).

§ 1338(c), which grants district courts' jurisdiction over civil actions "arising under" patent statutes). As these cases show, a claim does not "arise" from every law that is one of the claim's "ingredient[s]." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 807 (1986).

When applied to Plaintiffs' Complaint, these criteria point directly and exclusively at IEEPA. The Complaint and the Motion for Summary Judgment focus solely on whether IEEPA granted the President tariff authority. IEEPA is the *only* "substantive law under which the President acted," the *only* law whose meaning is contested, and the *only* law this Court must interpret to decide the case. Clinching the point, IEEPA is the central and *only* thrust of the government's defenses of the IEEPA tariffs, and the *only* subject matter of the two decisions that have reached the merits of challenges to the IEEPA tariffs. Both of those courts held the tariffs unlawful. *See Learning Res.*, 2025 WL 1525376, at *13 (holding that IEEPA "does not provide for" tariffs); *V.O.S. Selections*, 772 F. Supp. 3d. at 1373 (not reaching the question whether IEEPA provides for tariffs, but holding that the "unlimited" grant of tariff authority claimed by the President is unlawful), *appeal docketed*, No. 25-1812 (Fed. Cir. May 28, 2025).

This case's obvious focus on IEEPA does not faze the government. It ignores that focus and insists this case arises, not out of IEEPA, but out of "the HTSUS and the executive orders modifying it or directing its modification." Mot. 7. But neither the executive orders nor the HSTUS modifications meet any of the above governing criteria. This is not a close call, since the executive orders and HSTUS modifications fail every test: They are not "the substantive law under which the President acted," *Learning Res.*, 2025 WL 1525376, at *7 n.4; they did not "create the [Plaintiffs'] claim;" *Christianson*, 486 U.S. at 808; and they do not require interpretation by this Court to resolve this case, *id*.

The executive orders and HTSUS modifications fail all of these tests because neither has any relevance to this case unless the Court decides that IEEPA authorizes tariffs (the central topic the government has chosen not to address). For example, by the government's own account the HSTUS modifications consist of mechanical steps such as "'inserting … new headings' providing for specific tariff rates" to implement the IEEPA tariff, and "directing the Secretary of Homeland Security to alter the HTSUS to effectuate the [executive] orders," Mot. at 7 (internal quotation marks and citation omitted). This case's challenge to the President's claim that IEEPA grants him tariff authority does not "arise out of" these "new headings" that merely document the new tariff rates. The executive orders and HSTUS modifications are, at most, like the APA in *International Labor Rights Fund*: They are procedural mechanisms but do not constitute the substantive law from which this action arises. 357 F. Supp. 2d at 208 (holding that the action arose out of the Tariff Act of 1930).

To see the distinction, contrast our case with one that does arise from the HSTUS, *Lee Yuen Fung Trading Co. v. Dep't of Treasury*, 18 C.I.T. 139 (1994). There, an importer filed a "protest" action objecting that the U.S. Customs Service had classified its tea in the wrong HTSUS subheading—2106.90.60 ("Food preparations not elsewhere specified or included") rather than 0902.20.00 ("Other green tea (not fermented)"). 18 C.I.T. at 139. The court stated that the "action ar[ose] out of classification" in the relevant HTSUS subheading. *Id*. Jurisdiction in that case laid under § 1581(a), which provides jurisdiction for such protests, specifically citing the section of the Tariff Act of 1930 providing for protests of such classification decisions. Jurisdiction did not lie under § 1581(i), which is the residual subparagraph. Indeed, cases that do arise under the HSTUS generally are covered by a specific subparagraph of § 1581—which explains why the government cannot identify a single case that "ar[ose] out of" the HTSUS and provided jurisdiction under the

residual § 1581(i). This absence of precedent should remove any doubt that the government's motion cannot satisfy the § 1581(i) "arises out of" requirement.

### 2. The executive orders and HTSUS modifications are not "laws of the United States" in this context

Even if the government could meet that requirement, its theory still would fail because the executive orders and HTSUS modifications do not qualify as "law[s] of the United States." Modifications to the HSTUS are "provisions of law" only if they are "*made ... by the President under authority of law*." 19 U.S.C. § 3004(c)(1) (emphasis added). But the President did not make the relevant modifications "under authority of law." He lacked authority to make them because IEEPA does not grant him tariff power. The government's motion does not argue that it does. Therefore, the HSTUS modifications do not rest on any legal authority, and do not qualify as "provisions of law." 19 U.S.C. § 3004(c)(1).

The executive orders similarly fail to qualify as laws of the United States. Courts typically do not treat executive orders as "law." *See, e.g.*, *Sierra Club v. U.S. Dep't of Energy*, 134 F.4th 568, 573 (D.C. Cir. 2025) ("[A]n executive order is not 'law' within the meaning of the Constitution" and "[is] not judicially enforceable"); *see also City of New York v. FCC*, 486 U.S. 57, 63 (1988) (stating that "laws of the United States" refers only to "federal statutes themselves and federal regulations that are properly adopted in accordance with statutory authorization.").[4]

---

[4] The cited cases where the CIT heard challenges to executive orders imposing tariffs are inapposite, because in those cases the president undisputedly had authority under applicable tariff laws. *See* Mot. at 9–10 (citing *Transpacific Steel LLC v. United States*, 4 F.4th 1306 (Fed. Cir. 2021); *Solar Energy Indus. Ass'n v. United States*, 111 F.4th 1349 (Fed. Cir. 2024); *Michael Simon Design, Inc. v. United States*, 609 F.3d 1335 (Fed. Cir. 2010); *Motion Sys. Corp. v. Bush*, 437 F.3d 1356 (Fed. Cir. 2006); *Corus Group PLC v. ITC*, 352 F.3d 1351 (Fed. Cir. 2003); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86 (Fed. Cir. 1985); *HMTX Indus. v. United States*, No. 20-00177 (Ct. Int'l Trade), *appeal filed*, No. 23-1891, ECF No. 5 (Fed. Cir. May 25, 2023) (identifying the 4,100 similar cases)).

Even in contexts when executive orders could be treated as laws, they need a valid statutory foundation to qualify. "Executive Orders issued without statutory authority … are generally held not to be 'laws' of the United States." *Dreyfus v. Von Finck*, 534 F.2d 24, 29 (2d Cir. 1976) (citing cases). *See Glaxo Wellcome Inc. v. United States*, 126 F. Supp. 2d 581, 591 (Ct. Int'l Trade 2000) ("[T]he proclamation has [t]he force and effect of law *when issued pursuant to statutory mandate or delegation of authority from Congress*.") (emphasis added). The IEEPA tariff executive orders lack that necessary foundation.[5] They rely on IEEPA for their status as law and, as just noted, the government's motion fails to show that IEEPA authorizes the President to order tariffs. The executive orders therefore lack the statutory authority required to qualify as "laws."

### C. The Government Cannot Avoid the Plain Language of § 1581

The government's jurisdictional theory thus fails § 1581's two primary requirements. These specific failures both reflect an effort to avoid the established meaning of the terms Congress used in § 1581—"arises out of" and "laws of the United States." The Supreme Court has warned against efforts to expand CIT jurisdiction by ignoring the limits of § 1581's language. After rejecting one such effort by enforcing the letter of § 1581, the Court admonished that "Congress did not commit to the Court of International Trade's exclusive jurisdiction every suit against the Government challenging customs-*related* laws and regulations." *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988) (emphasis added). *See id.* at 184 (affirming jurisdiction in the district

---

[5] Supreme Court decisions addressing President McKinley's efforts to impose tariffs on the new territories of Puerto Rico and the Philippines are instructive in highlighting the President's inability to impose tariffs without a Congressional grant of authority. In *U.S. v. Heinszen*, 206 U.S. 370 (1907), the Court acknowledged that tariffs the President imposed on the Philipines before Congress passed a tariff statute granting any such authority were illegal. *Id.* at 382. The President has no inherent tariff authority and the executive orders which emerge solely from his Article II powers cannot impose them. *Id.* Here, the President had no Article II authority to order the IEEPA tariffs.

court and applying the "ordinary meaning" of words in 28 U.S.C. § 1581). *See also Coal. to Preserve the Integrity of Am. Trademarks v. United States*, 790 F.2d 903, 907 (D.C. Cir. 1986) (refusing to "depart[] from [§ 1581's] literal terms"). This Court should likewise hold the government to the ordinary meaning of "arising from" and "laws of the United States" as Congress used them in 28 U.S.C. § 1581 and reject the government's theory.

### III. THE GOVERNMENT'S VAGUE ALTERNATE THEORY BASED ON *YOSHIDA* IS WHOLLY UNSUPPORTED

The government supplements the argument based on the executive orders and HSTUS by tacking on an alternate argument based on *United States v. Yoshida International*, 526 F.2d 560, 566 (C.C.P.A. 1975). But that argument fails because *Yoshida* does not involve § 1581 or any predecessor. In *Yoshida*, an importer sued to recover amounts it had paid because of a Proclamation President Nixon issued that imposed a limited tariff. *Id.* at 567. The government defended the tariff by citing the Trading with the Enemy Act, the predecessor to IEEPA. *Id.* at 570. *Yoshida* is irrelevant on the jurisdictional question, because jurisdiction apparently rested on § 1582(a), which (in the version applicable at the time) assigned the Customs Court jurisdiction over denials of tariff protests made under the Tariff Act of 1930. *See* 28 U.S.C. § 1582(a) (1970) ("The Customs Court shall have exclusive jurisdiction of civil actions instituted by any person whose protest pursuant to the Tariff Act of 1930, as amended, has been denied … ."). *See Yoshida Int'l, Inc.*, 526 F.2d at 566 (referring to liquidations and protests); *Yoshida Int'l, Inc. United States,* 378 F. Supp. 1155, 1157 (Cust. Ct. 1974) (describing duties plaintiff paid three years earlier), *rev'd*, 526 F.2d 560.[6]

---

[6] *Alcan Sales, Division of Alcan Aluminum Corp. v. United States*, 693 F.2d 1089 (Fed. Cir. 1982), is irrelevant for the same reason. Other cases the government cites where the CIT had jurisdiction are equally irrelevant. *See, e.g.*, *Cornet Stores v. Morton*, 632 F.2d 96, 99–100 (9th Cir. 1980) (jurisdiction was based on § 1582); *Henry Pollak, Inc. v. Blumenthal*, 444 F. Supp. 56, 58 (D.D.C. 1977) (same), *aff'd*, 593 F.2d 1371 (D.C. Cir. 1979). In *Earth Island Institute v. Christopher*, 6

The government's citations relating to constitutional claims also are inapposite, because the existence of constitutional claims does not displace jurisdiction in district court.[7] None of these back-up arguments save the government's motion.

### IV.    THIS COURT IS REQUIRED TO DECIDE ITS OWN JURISDICTION, NOT PERMIT ANOTHER COURT TO DO SO

In light of the government's failure to satisfy § 1581, it is no surprise the government would prefer to take its chances with having the CIT decide whether it has jurisdiction. This Court should reject that last-ditch plea. The government asks this Court to transfer this case to the CIT to decide this Court's jurisdiction for it. Mot. 10. But the government is mistaken when it contends that district courts sometimes transfer cases to the CIT to determine jurisdiction. *Id.* at 5. The original court decided its own jurisdiction in each case the government cites, and each court concluded that jurisdiction lay in the CIT because a statute underlying the case expressly addressed tariffs. (The exception is *Furniture Brands Int'l, Inc. v. ITC*, 804 F. Supp. 2d 1, 6–7 (D.D.C. 2011), where the district court based its decision on the first-filed rule.)[8] Without exception, those courts applied

---

[7] F.3d 648, 650–51 (9th Cir. 1993), which involved an embargo, CIT jurisdiction lay under § 1581(i)(3) and (4) (now § 1581(i)(1)(C) and (D)), which expressly refers to embargoes.

[7] Plaintiffs do not dispute that the CIT can decide constitutional claims if it has jurisdiction under § 1581. The government's assertion that the CIT has authority to decide constitutional claims is therefore irrelevant. *See* Mot. 9 (citing *U.S. Shoe Corp. v. United States,* 523 U.S. 360 (1998); *PrimeSource Bldg. Prods., Inc. v. United States*, 59 F.4th 1255 (Fed. Cir. 2023); *Totes-Isotoner Corp. v. United States*, 594 F.3d 1346, 1350-51 (Fed. Cir. 2010)).

[8] *See* Mot. 5 (citing *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004); *Pat Huval's Fisherman Wharf v. ITC*, No. Civ.A. 06-324, 2006 WL 2460846, at *2–4 (W.D. La. Aug. 22, 2006)); Mot. 10 (citing *Miami Free Zone Corp. v. Foreign Trade Zones Bd.*, 22 F.3d 1110, 1113 (D.C. Cir. 1994)). The government misunderstands *Pentax Corp. v. Myhra*, 72 F.3d 708 (9th Cir. 1995). The district court there had dismissed the action because Pentax sought "to avoid paying … [a] duty." 72 F.3d at 711. The Ninth Circuit thus agreed that the district court lacked jurisdiction. *Id.* The Ninth Circuit, however, declined to express an opinion on other possible jurisdictional and timeliness bars that would *have precluded the CIT from exercising jurisdiction. Id.* In this context, the Ninth Circuit concluded it was "prudent" for the district court to transfer the case to the CIT—rather than dismiss it—so the CIT could examine the *other* possible bars.

the well-established principles that every court must decide its own jurisdiction, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), and every court must hear every case within that jurisdiction (with rare exceptions not relevant here), *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). The Supreme Court endorsed this long-established approach in *K Mart*, where it granted certiorari specifically "to resolve conflicts among the Courts of Appeals"—including between the D.C. Circuit and Federal Circuit—and "affirm[ed] … that the *District Court* had jurisdiction." 485 U.S. at 182. This Court should discharge its obligation to decide its own jurisdiction, and should deny the government's Motion to Transfer this case to the CIT.

## CONCLUSION

Having failed to meet either prong of § 1581's requirements, the government cannot displace this Court's jurisdiction under § 1331.

<u>/s/ *John J. Vecchione*</u>
John J. Vecchione
Andrew J. Morris*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Tel.: (202) 869-5210
Fax: (202) 869-5238
john.vecchione@ncla.legal
andrew.morris@ncla.legal

 * admitted *pro hac vice*

*Counsel for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I certify that on August 11, 2025, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will send notification of such filing to the following

CM/ECF participants.

Luke Mathers
Trial Attorney
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278

/s/ Andrew J. Morris
Andrew J. Morris