## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| FIREDISC, Inc., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:25-cv-01134-DAE |
| | § | |
| DONALD J. TRUMP, in his official capacity | § | |
| as President of the United States, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO TRANSFER**

"Congress granted the Court of International Trade exclusive jurisdiction over suits relating to tariffs, duties, fees, or other taxes on the importation of merchandise," *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 188 (1988) (cleaned up), reflecting a time-honored choice to consolidate trade matters in a specialized court. The CIT has already confirmed that it has jurisdiction to hear challenges to the same IEEPA tariffs at issue in this case, including issuing final judgments in three such cases. And on appeal of two of those cases, the *en banc* Federal Circuit has held oral argument on the merits with no indication that it disagrees with the CIT's jurisdictional analysis. *V.O.S. Selections, Inc. v. United States*, No. 2025-1812, ECF No. 153 (Fed. Cir. July 31, 2025) (submitting the case after oral argument, during which no judge asked about jurisdiction even though the issue was briefed).

The Court should reject plaintiffs' attempt to evade the CIT's exclusive jurisdiction. Plaintiffs challenge tariffs imposed by Executive Orders under IEEPA that make or direct modifications to the Harmonized Tariff Schedule of the United States (HTSUS). That is precisely the sort of case "aris[ing] out of any law of the United States providing for … tariffs" or for "administration and enforcement with respect to" tariffs that Congress has routed to the exclusive jurisdiction of the CIT. 28 U.S.C. § 1581(i)(1)(B), (D). Plaintiffs' contrary arguments fail to apprehend that an action can arise out of more than one law, misread the authorities on which they rely, and ultimately turn Congress's scheme

of exclusive jurisdiction on its head. The Court should transfer this case to the CIT.[1]

## **ARGUMENT**

### I.    **Jurisdiction Lies Exclusively In The CIT Under 28 U.S.C. § 1581(i)**

Our motion explained that the CIT has exclusive jurisdiction over this case because the action arises out of the HTSUS, which is unquestionably a law of the United States providing for tariffs and their administration and enforcement. Mot. 6-8; *see* 28 U.S.C. § 1581(i)(1)(B), (D). Indeed, four courts (including the CIT itself) have found that challenges to these IEEPA tariffs belong exclusively in the CIT. Mot. 7-8. Plaintiffs advance four arguments to evade the CIT's jurisdiction; none is persuasive.

**A.**    First, plaintiffs argue that this case does not arise out of the HTSUS because IEEPA, not the HTSUS, is "the substantive law giving rise to the[] claims." Opp. 8-12. But more than one substantive law can give rise to an action, and plaintiffs' claims here arise out of not just IEEPA, but also the HTSUS (and presidential modifications to it), both of which play necessary roles in imposing the tariffs that plaintiffs challenge. The "gravamen" and "true nature" of plaintiffs' action, Opp. 9, is that the tariffs, which were effectuated through "modifications made to the [HTSUS]," are unlawful, "cause irreparable harm to Plaintiffs," and should be vacated, ECF No. 1 ¶ 1; *see also id.* ¶¶ 8-9, 37-39, 42, 53-54, 65-66, 73-74, 77-79 & Prayer for Relief. That is why plaintiffs seek *three different kinds* of relief from the HTSUS modifications. ECF No. 1 at 23 (Prayer for Relief seeking a declaration that "the resulting HTSUS modifications are unlawful," "[v]acatur of all HTSUS modifications made to implement the Tariff Executive Orders," and an injunction barring defendants from "implementing or enforcing" the "modifications to the HTSUS").

Tellingly, if plaintiffs did *not* seek to invalidate the HTSUS provisions imposing the tariffs, they

---

[1] Plaintiffs have treated this motion as a non-case management motion and filed a 16-page response. ECF No. 14 (Opp.). Thus, we limit our reply to the 10 pages permitted for a reply in support of such a motion. Local Rule 7(E)(3). If the Court instead views this as a case management motion and grants plaintiffs an enlargement of the page limits, we request the same accommodation.

would lack standing to bring their claims because their alleged injuries would go unredressed, leaving them with merely "psychic satisfaction" from a court's interpretation of IEEPA. *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1306 (11th Cir. 2018). But rather than ask this court to issue a mere advisory opinion, plaintiffs sought changes to the HTSUS—showing that the HTSUS is the source of plaintiffs' asserted injuries. Because plaintiffs challenge the tariffs imposed and implemented through revisions to the HTSUS, their action "arises out of" the HTSUS. 28 U.S.C. § 1581(i)(1); *see V.O.S. Selections, Inc. v. United States*, No. 25-cv-66, ECF No. 63 at 3 (Ct. Int'l Trade June 3, 2025) (CIT jurisdiction in IEEPA tariffs cases is proper because "[t]he challenged" executive orders "effect changes to the [HTSUS]"). Adopting a different rule would leave the CIT's jurisdiction vulnerable to manipulation by the sort of artful pleading that courts have long rejected in other jurisdictional contexts. *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) (discussing the well-pleaded complaint rule and artful pleading rule); *Amoco Prod. Co. v. Hodel*, 815 F.2d 352, 361 (5th Cir. 1987) ("Courts consistently endeavor to 'pierce' the pleadings so that artful pleading does not undercut the jurisdiction of [a forum with exclusive jurisdiction].").

Moreover, plaintiffs' reading of section 1581(i) to apply only to one law at a time cannot be squared with section 1581(i)'s text. Section 1581(i) focuses on the legal authority implicated by the "civil action," 28 U.S.C. § 1581(i)(1), without limiting the jurisdictional inquiry solely to the law on which the Executive Branch's action was premised. That makes sense because the challenged Executive Orders cite more than one law to support the President's authority, including the statute authorizing the President to modify the HTSUS. *See, e.g.*, Executive Order 14257, 90 Fed. Reg. 15041, 15041 (Apr. 7, 2025) ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act (50 U.S.C. 1701 *et seq.*) … [and] section 604 of the Trade Act of 1974, as amended (19 U.S.C. 2483)"). It also makes sense because section 1581(i)(1)(B) does not mention any Executive Branch action imposing

tariffs; nor does jurisdiction under that provision turn on whether tariffs are imposed through an Executive Branch action. The provision would readily give the CIT jurisdiction over an action challenging a statute that imposed tariffs without any Executive Branch involvement. Indeed, the statute's text naturally directs an inquiry about the claims the lawsuit asserts and the legal authority that it challenges. *See K Mart*, 485 U.S. at 188 (recognizing that "Congress granted the [CIT] exclusive jurisdiction over suits relating to 'tariffs, duties, fees,'" and the like); *Int'l Lab. Rights Educ. & Rsch. Fund v. Bush*, 954 F.2d 745, 747 (DC. Cir. 1992) (Henderson, J., concurring) (action fell "squarely within" CIT's jurisdiction "because the claims raised 'relate to' duties"). Here, plaintiffs' claims challenge the lawfulness of the imposition of tariffs via modifications of the HTSUS.

Plaintiffs chiefly rely on *International Labor Rights Fund v. Bush*, 357 F. Supp. 2d 204 (D.D.C. 2004), Opp. at 8-9, but that case only underscores our point. There, the plaintiffs argued that a challenge to *in*action under Section 307 of the Tariff Act of 1930 (rather than the *action* taken here under IEEPA and the HTSUS) fell within the district court's jurisdiction because it was like "countless APA cases brought … in the District Court." *Id.* at 208. The district court disagreed, explaining that "the substantive law giving rise to" the claims was Section 307—the law causing plaintiffs' injury— not the APA, which only provides a general cause of action. *Id.*[2] Here, too, the HTSUS (and the challenged modifications to it) is the substantive source of plaintiffs' alleged injury. That IEEPA may *also* be "substantive law" from which this case arises does not matter; the CIT's exclusive jurisdiction encompasses cases that "arise[] out of *any* law" of the relevant type. 28 U.S.C. § 1581(i)(1) (emphasis added).

---

[2] The court in *International Labor Rights Fund* also noted that the CIT had previously exercised jurisdiction over cases like the one before it, "support[ing] the Court's finding that the plaintiffs' action falls within the CIT's exclusive jurisdiction." 357 F. Supp. 2d at 209. So too here. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025). Only furthering the point is the fact that all but one of the district courts where various plaintiffs have sought to litigate the IEEPA tariffs have concluded that jurisdiction rests exclusively with the CIT.

Plaintiffs' related argument, that "the court must interpret" IEEPA, not the HTSUS, "to decide the case" (Opp. 8-11), fails for the same reasons. Contrary to plaintiffs' contention, *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), did not hold that a case arises from a law only when it "require[s] interpretation" of that law. At bottom, whether IEEPA is one law from which this action arises (which we do not dispute) does not address the fundamental point in our motion: that this action also arises out of the HTSUS, and the CIT has exclusive jurisdiction when a case "arises out of *any* law of the United States providing for … tariffs" or their "administration and enforcement." 28 U.S.C. § 1581(i)(1) (emphasis added).[3]

Unable to escape that four courts have held that jurisdiction over identical challenges belong exclusively before the CIT, plaintiffs incorrectly assert that no court has adopted the argument that these actions arise out of the HTSUS. Opp. 6-7. The CIT expressly concluded that the same challenge in *V.O.S. Selections* falls within section 1581(i) because "an action involving a challenge to a presidential action that imposes tariffs" through "amendments to the HTSUS" is "one that arises from a 'law providing for'" tariffs. 772 F. Supp. 3d at 1365-67. The CIT further elaborated that the President's orders "effect changes to the [HTSUS]," which is a "law" within the meaning of section 1581(i). No. 25-cv-66, ECF No. 63 at 3. The California district court likewise stressed that the President's orders "modify, or instruct the Department of Homeland Security to modify, the [HTSUS], which is a statutory provision," making the "modifications themselves … statutory provisions." *California v. Trump*, 2025 WL 1569334, at *4 (N.D. Cal. June 2, 2025). Thus, the court concluded that "[t]his action arises out of a law pertaining to international trade—whether that law is the Harmonized Tariff

---

[3] Plaintiffs offer an inapposite discussion of *Lee Yuen Fung Trading Co. v. Department of Treasury*, 18 C.I.T. 139 (1994). Opp. 11-12. As plaintiffs acknowledge, "[j]urisdiction in that case laid under § 1581(a)," which covers challenges to the calculation of duties owed and similar "protestable" decisions by Customs. *Id.* at 11. That subsection does not deal with whether a case "arises from the HTSUS." *Id.*; *see* 28 U.S.C. § 1581(a) (granting the CIT jurisdiction over actions "commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930").

Schedule the executive orders modified, the executive orders themselves, or IEEPA." *Id.* at *5. Either way, "the CIT has exclusive jurisdiction under 28 U.S.C. § 1581(i)(1)." *Id.* at *6.[4]

    **B.**    Second, plaintiffs contend (Opp. 12-13) that the HTSUS (and modifications to it) are not a "law of the United States," 28 U.S.C. § 1581(i)(1), even though 19 U.S.C. § 3004(c)(1) provides that the HTSUS, and the President's modifications to it, "shall be considered to be statutory provisions of law for all purposes." In plaintiffs' view, the modifications to the HTSUS were not made "under authority of law," 19 U.S.C. § 3004(c)(1)(C), because "IEEPA does not grant [the President] tariff power," Opp. 12.

But this overlooks Section 604 of the Trade Act of 1974—expressly referenced in 19 U.S.C. § 3004(c)(1)(C) and the challenged Executive Orders—which authorizes the President to "embody in the [HTSUS] the substance of the relevant" statutory provisions governing tariffs "and of other *Acts affecting import treatment, and actions thereunder*, including removal, modification, continuance, or imposition of any rate of duty or other import restriction." 19 U.S.C. § 2483 (emphasis added); *e.g.*, Executive Order 14257, 90 Fed. Reg. 15041, 15041 (Apr. 7, 2025) ("By the authority vested in me as President by the Constitution and the laws of the United States of America, including … section 604 of the Trade Act of 1974, as amended (19 U.S.C. 2483)"). IEEPA is plainly an "Act[] affecting import treatment": it allows the President to "prevent or prohibit," as well as "regulate," "importation." 50 U.S.C. § 1702(a)(1)(B).

Thus, plaintiffs' focus on whether IEEPA provides tariff authority is misplaced in the jurisdictional inquiry. Because Section 604 authorizes the modifications to the HTSUS, the modifications were "made … under authority of law" for purposes of 19 U.S.C. § 3004(c)(1)(C), and

---

[4] The CIT in *Barnes v. United States*, 2025 WL 1483384 (Ct. Int'l Trade May 23, 2025), cited at Opp. 7, also confirmed that it has exclusive jurisdiction over challenges to the IEEPA tariffs (though it dismissed that action for lack of standing). It arrived at that conclusion without reaching the merits, contradicting the approach plaintiffs ask this Court take. *Id.* at *3.

are therefore "statutory provisions of law for all purposes," *id.* § 3004(c)(1). *See also California*, 2025 WL 1569334, at *4 ("section 3004 does not say 'under authority of valid law'"). That is the end of the jurisdictional analysis. Adopting plaintiffs' contrary approach would conflate the merits of their claim and the jurisdictional issue as a single inquiry. The Supreme Court has cautioned against reading jurisdictional statutes in a way that "would make a court's jurisdiction … dependent upon the merits of the claim." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 554 (2022). For good reason: where Congress has provided for review of a class of cases in a particular court, "it would be nonsensical to say that the jurisdiction of the reviewing body is limited to instances in which the underlying decision construes and applies the statute correctly." *Michael Simon Design, Inc. v. United States*, 609 F.3d 1335, 1341 (Fed. Cir. 2010).

**C.**    Plaintiffs would also have the Court ignore the cases that channeled similar challenges to tariffs under IEEPA's predecessor statute to the CIT's predecessor court. *See* Mot. 8 (citing cases); Opp. 14-15. In plaintiffs' telling, those cases are "irrelevant" because they involved a different jurisdictional provision, section 1582. Opp. 14. But plaintiffs overlook that Congress subsequently amended section 1582 by (1) retaining that jurisdiction in the modern-day section 1581(a), and (2) *adding* new bases for jurisdiction, including through the new section 1581(i). *See Earth Island Inst. v. Christopher*, 6 F.3d 648, 651 (9th Cir. 1993) (explaining the legislative developments). In other words, section 1581(i) "*expanded* the jurisdiction of the CIT beyond that of the earlier Customs Court." *Id.* (emphasis added). If the CIT's predecessor had exclusive jurisdiction over challenges to tariffs under IEEPA's predecessor, then the CIT today, under its expanded jurisdiction, has exclusive jurisdiction over challenges to tariffs under IEEPA.

**D.**    Finally, even if the CIT's exclusive jurisdiction over this case were unclear, transfer to the CIT for a determination of *its* jurisdiction would be warranted. Mot. 10 (citing cases). This is not a request that the CIT "decide this Court's jurisdiction for it," as plaintiffs mischaracterize. Opp. 15.

Rather, it is a recognition that the CIT (and the Federal Circuit on appeal) is intimately familiar with the scope of its own jurisdictional statutes, and when it is plausible that the CIT has exclusive jurisdiction, the CIT "should be given the opportunity to utilize its own expertise concerning the applicable statutes, and to determine whether or not it has jurisdiction." *SCM Corp. v. ITC*, 549 F.2d 812, 821 (D.C. Cir. 1977); *see Commodities Exp. Co. v. U.S. Customs Serv.*, 957 F.2d 223, 227 (6th Cir. 1992) (the CIT "has the power to decide its own jurisdiction"; to hold otherwise "would invite the various district and circuit courts to redraw the jurisdictional lines separating the two tribunals").

The plausibility here is evident, as the CIT has already concluded that it has exclusive jurisdiction over challenges to the IEEPA tariffs, and the Federal Circuit has already held oral argument on the merits of those cases. And the CIT has stayed other IEEPA challenges pending the outcome of the Federal Circuit's decision—and denied requests to reconsider the stay to litigate jurisdiction, where "subject matter jurisdiction is a threshold issue that the court fully considered in *V.O.S. Selections*" and found satisfied under 28 U.S.C. § 1581(i). *See Emily Ley Paper Inc. v. Trump*, No. 25-cv-96, ECF No. 49 (Ct. Int'l Trade July 18, 2025). Plaintiffs' citation (Opp. 5) to *International Fidelity Insurance Co. v. Sweet Little Mexico Corp.*, 655 F.3d 671 (5th Cir. 2011), is irrelevant. That case involved a different section of the CIT's jurisdictional statute providing for jurisdiction over "any counterclaim, cross-claim, or third-party action …." 655 F.3d at 674. Where "the procedural posture of the proceedings" was such that there was "no basis" on which the plaintiff could bring such a counterclaim, cross-claim, or third-party action, the Fifth Circuit found that those claims did not fall under the CIT's exclusive ambit. *Id.* at 675. There is no analogy to plaintiffs' claims here—and they make none. Opp. 5.

## CONCLUSION

For these reasons, the Court should transfer this action to the CIT.

Dated: August 18, 2025

OF COUNSEL:

**ALEXANDER K. HAAS**
Director

**STEPHEN M. ELLIOTT**
Assistant Director
U.S. Department of Justice
Civil Division
Federal Programs Branch

**SOSUN BAE**
Senior Trial Counsel
**BLAKE W. COWMAN**
**COLLIN T. MATHIAS**
**CATHERINE M. YANG**
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch

Respectfully submitted,

**BRETT A. SHUMATE**
Assistant Attorney General

**ERIC J. HAMILTON**
Deputy Assistant Attorney General

**PATRICIA M. McCARTHY**
Director

**CLAUDIA BURKE**
Deputy Director

**JUSTIN R. MILLER**
Attorney-In-Charge
International Trade Field Office

*/s/ Luke Mathers*
**LUKE MATHERS**
Trial Attorney
Illinois State Bar No. 6330094
U.S. Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9236 (phone)
(212) 264-1916 (fax)
Luke.Mathers@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

       I hereby certify that on the 18th day of August, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

       Andrew J. Morris
       John J. Vecchione
       New Civil Liberties Alliance
       4250 North Fairfax Dr., Suite 300
       Arlington, Virginia 22203

                                          */s/ Luke Mathers*
                                          **Luke Mathers**
                                          Trial Attorney