**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| FIREDISC, Inc., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity <br> as President of the United States, *et al.*, <br><br> *Defendants*. | Case No. 1:25-cv-01134-DAE |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL
AUTHORITY IN SUPPORT OF THEIR MOTION TO TRANSFER**

*V.O.S. Selections v. Trump* is wrong about jurisdiction. It contradicts Supreme Court and Fifth Circuit precedent, and should not be followed. *V.O.S. Selections v. Trump,* No. 2025-1812, 2025 WL 2490634, at *8-*9 (Fed. Cir. Aug. 29, 2025).

That court strains to find original jurisdiction in the Court of International Trade ("CIT"), leading it to commit fatal errors. First, it excludes the International Economic Emergency Powers Act ("IEEPA") from its jurisdictional analysis, even though IEEPA's scope is the *only* issue in the case. Indeed, IEEPA is the sole focus of the extensive merits discussion in *V.O.S. Selections* itself. But the court's jurisdictional analysis sidesteps that statute by asserting that courts cannot examine their own jurisdiction when this examination overlaps with the merits. That assertion contradicts Supreme Court and Fifth Circuit precedent that requires courts to validate their jurisdiction before addressing the merits. It also contradicts the jurisdictional statute for the CIT, 28 U.S.C. § 1581.

Second, after erroneously dodging IEEPA, the court finds jurisdiction based on items that are not sources of controversy in the case: the executive orders themselves, which the court considers without acknowledging they rely on IEEPA, and the implementing modifications to the Harmonized Tariff Schedules of the United States ("HTSUS"). But the court's approach fails both of § 1581's requirements for jurisdiction: (1) The *V.O.S. Selections* case does not "arise out of" the executive orders (as distinct from their reliance on IEEPA) or the HTSUS modifications, and (2) those orders and modifications do not constitute "law[s]" in this context.

The court's jurisdictional analysis amounts to describing *Moby Dick* without mentioning the white whale—instead, discussing minor characters who have no role in the story's outcome. That strained effort leads the court into the series of errors described here.

### 1. *V.O.S. Selections* Incorrectly Holds That a Court Cannot Test Its Own Jurisdiction if That Inquiry Overlaps with the Merits

Section 1581(i)(1) confers authority on the CIT only if an action "arises out of" a "law of the United States providing for … tariffs." § 1581(i)(1)(B). As Plaintiffs explained in their Response and Opposition to Defendants' Motion to Transfer, ECF No. 11 ("Opposition" or "Opp."), actions challenging the IEEPA tariffs arise only out of IEEPA. *See* Opp. at 10. Yet the *V.O.S. Selections* court takes the remarkable step of excluding that statute from its jurisdictional analysis. The court points out that deciding whether IEEPA authorizes tariffs would overlap with the merits,  then asserts that it cannot test its own jurisdiction if that threshold inquiry would overlap with the merits. *See* 2025 WL 2490634, at *9 & n.11 (stating that the *Learning Resources* court "erroneously conflate[s] the merits question of whether IEEPA authorizes tariffs with the jurisdictional issue").

That assertion is wrong, because it conflicts with the axiom that each court must validate its own jurisdiction before considering the merits. *See* Opp. at 16 (citing *Steel Co. v. Citizens for*

*a Better Env't*, 523 U.S. 83, 94 (1998)). This axiom applies even if the jurisdictional inquiry overlaps with the merits, as the Supreme Court has stressed. *See, e.g.*, *Bolivarian Rep. of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 178 (2017) (to "answer the jurisdictional question," courts sometimes "decide some, *or all*, of the merits issues"); *Brownback v. King*, 592 U.S. 209, 217 (2021) (where "the merits and jurisdiction … come intertwined[] … a court can decide all of the merits issues in resolving a jurisdictional question, or vice versa"). *See also Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020) (confirming that a court must address its jurisdiction at the outset, including when the jurisdictional inquiry "merges with the merits"). *V.O.S. Selections* conflicts with these precedents.

The two cases the court cites only highlight its error. Neither is relevant. *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913), involved a claim for patent infringement, for which a statute provided federal jurisdiction. *Id*. at 24. The court rejected an attempt by the defendant to defeat jurisdiction by making the merits argument that it had not violated the plaintiff's patent. *Id*. Likewise, *Bell v. Hood,* 327 U.S. 678, 682–83 (1946), illustrates the principle that, regardless of the merits, 28 U.S.C. § 1331 grants federal courts jurisdiction over properly pleaded constitutional claims. *Id*. at 679. *See also id*. at 682 (holding that whether the Constitution actually provides a cause of action for damages is a merits issue to be decided once the court has jurisdiction).

*Fair* and *Bell* illustrate the basic rule that a defendant cannot defeat jurisdiction by disputing the merits. *See Steel Co.,* 523 U.S. at 89  (citing *Fair* and *Bell*, stating "It is firmly established … that the absence of a valid … cause of action does not implicate subject-matter jurisdiction.") But that basic rule does not establish its converse. As a matter of logic, this rule does not establish that a court cannot conduct a threshold evaluation of its own jurisdiction if that

evaluation *also* resolves the merits. Rather, as the above precedents hold, a court cannot abdicate its responsibility to determine its own jurisdiction even when that determination overlaps with the merits.

The *V.O.S. Selections* assertion that it could not evaluate its own jurisdiction relating to IEEPA is error. That court's rejection of *Learning Resources* rests on that error. As Plaintiffs explained in their Opposition, *Learning Resources* correctly explains that a court hearing a challenge to the IEEPA tariffs cannot decide jurisdiction without deciding whether IEEPA "provides for … tariffs." *See* Opp. 8-10. This Court should follow *Learning Resources*.

**2. The Court Erred When It Based Jurisdiction Not on IEEPA, But on the Executive Orders (Stripped of References to IEEPA) and HTSUS modifications**

After the *V.O.S. Selections* court erroneously excludes IEEPA from its jurisdictional analysis, it finds jurisdiction based on alternative grounds: the executive orders—without reference to their reliance on IEEPA—and the implementing modifications to the HTSUS. 2025 WL 2490634, *9. But these alternate grounds cannot provide a basis for jurisdiction, because each fails both the "arises out of" and the "law of the United States" requirements of § 1581(i)(1).

**a. The challenges to the IEEPA tariffs do not "arise out of" the executive orders or the HTSUS modifications**

The court briefly mentions the "arises out of" requirement, stating that it refers to the law "invoked as authority to impose a tariff." 2025 WL 2490634, at *9. But the court fails to note that the executive orders and HTSUS modifications fail this test, because the President never invoked them as "authority" for the IEEPA tariffs. These proposed jurisdictional bases also fail to meet the other criteria courts have established for the "arises out of" requirement—for example, that the jurisdictional basis should be the substantive law the court must interpret to

decide the case. *See* Opp. at 8-11 (quoting authorities and explaining that the executive orders and the HTSUS modifications fail the governing criteria).

Only IEEPA meets the governing criteria. *See* Opp. at 10. In fact, *V.O.S. Selections* vividly illustrates why. The court's 127 pages of opinions (*per curiam* opinion; additional views; and dissenting opinion) analyze IEEPA in extensive detail. Not one page, however, addresses any dispute about interpreting the executive orders or the HTSUS. The government reiterated the same singular focus on IEEPA when it petitioned the Supreme Court to review the Federal Circuit's decision. Pet. for Writ of Cert., *Trump v. V.O.S. Selections, Inc*., No. 25-250 (Sep. 3, 2025); Motion to Expedite Consideration, *Trump v. V.O.S. Selections, Inc*., No. 25-250 (Sep. 3, 2025). The Petition for Writ of Certiorari focuses solely on interpreting IEEPA, and the Motion highlights, from the outset, that the subject matter of the case is "legal standing of the President's tariffs under [IEEPA]." Mot. at 1. Neither filing suggests the Supreme Court needs to interpret the executive orders—again, except for their reliance on IEEPA—or the HTSUS modifications.

### b. In this context, the executive orders and the HTSUS modifications are not "laws"

*V.O.S. Selections* also fails to show that the executive orders and HTSUS modification are "laws" in this context. Plaintiffs' Opposition explained why they are not. Opp. at 12-13. *V.O.S. Selections* does acknowledge that the executive orders can modify the HTSUS only if they themselves are "authorized, 2025 WL 2490634, at *9, but it fails to recognize that the executive orders are "authorized" only if IEEPA authorizes tariffs. The court's opinion does not conclude that  IEEPA authorizes tariffs, so it does not support its conclusion that the executive orders qualify as "laws."

The court similarly acknowledges that HTSUS modifications are valid only if they were made "under authority of law." *Id*. at *9. But the court does not establish that the HTSUS

modifications meet this requirement—again, because the court does not conclude that the President has "authority" under IEEPA to order tariffs. The HTSUS modifications therefore do not rest on any legal "authority," and do not qualify as "provisions of law." (c)(1).

### 3. The Court's Reference to the Purpose of CIT Jurisdiction Caps Its Erroneous Approach to Jurisdiction

*V.O.S. Selections* caps its jurisdictional discussion with a final error, stating that finding jurisdiction over the challenges to the President's use of IEEPA "is *consistent with the reason why Congress established* this exclusive [CIT] jurisdiction in the first place." 2025 WL 2490634, at *9 (emphasis added). This statement is wrong for two reasons.

First, jurisdiction is determined by the specific language of § 1581, not by the vaguer purpose of the CIT. The Supreme Court made this clear in *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176 (1988), which *V.O.S. Selections* cites but misreads. *K Mart Corp.* stressed that courts must determine jurisdiction under § 1581 based on the precise statutory language: "Congress … *delineat[ed] precisely the particular customs-related matters over which the Court of International Trade would have exclusive jurisdiction.*" *Id.* at 188 (emphasis added). The Court then held that CIT did not have jurisdiction over gray-market imports because they are not covered by § 1581's use of the word "embargo." *Id.* at 189-90. *See* Opp. 13-14.

The Fifth Circuit likewise requires adherence to § 1581's express language, as illustrated by *International Fidelity Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671 (5th Cir. 2011). There, a surety sued its principal to recover import duties the surety had paid on the principal's behalf. *Id.* at 673. The principal argued that jurisdiction lay in the CIT based on "the rationale behind relying on the unique ability of the CIT to adjudicate claims regarding Customs and international trade issues." *Id.* at 676. The Fifth Circuit rejected that argument, instead applying the statutory text: "the CIT's exclusive jurisdiction is expressly defined, and thus delimited by

statutes." *Id.  Accord Coal. to Preserve the Integrity of Am. Trademarks v. United States*, 790 F.2d 903, 907 (D.C. Cir. 1986) (declining to "depart[] from [§ 1581's] literal terms").

The court's second error is its conclusion that interpreting IEEPA lies within the purpose of CIT jurisdiction. The CIT's expertise is interpreting technical tariff statutes, customs schedules, and related regulations. *See United States v. Haggar Apparel Co.*, 526 U.S. 380, 394 (1999) (the CIT's expertise is  in "making complex determinations in a specialized area of the law," by "evaluat[ing] customs regulations and their operation"). That expertise does not extend to IEEPA, which is an emergency statute codified in U.S. Code Title 50, "War and National Defense," a topic far afield from technical customs schedules and regulations. That is why CIT had *never* interpreted IEEPA before this past April, when a plaintiff challenging the IEEPA tariffs chose to file in the CIT. This mismatch between IEEPA and the CIT's expertise explains why the court's strained effort to find jurisdiction was misbegotten from the start.

## CONCLUSION

The *V.O.S. Selections* jurisdictional holding rests on multiple legal errors and should not be followed.

/s/ *John J. Vecchione*
John J. Vecchione
Andrew J. Morris*
NEW CIVIL LIBERTIES ALLIANCE
4250 N. Fairfax Drive, Suite 300
Arlington, VA 22203
Tel.: (202) 869-5210
Fax: (202) 869-5238
john.vecchione@ncla.legal
andrew.morris@ncla.legal

 * admitted *pro hac vice*

*Counsel for Plaintiffs*
